## SANDS v. DAVID BRADLEY & CO.

No. 2492.   Opinion Filed January 7, 1913.

(129 Pac. 732.)

1.   WITNESSES—Competency—Wife of Party. Defendant offered his wife as a witness in his own behalf, on the theory that the transaction about which she was to testify occurred prior to their marriage, and that the statute prohibiting a wife from testifying for or against her husband did not extend to transactions or communications prior to the marriage. She was not jointly interested in the action; nor was she the agent of her husband. Held, that she was incompetent as a witness.

2.   SAME. The competency of the wife as a witness depends upon the relationship at the time of the trial, when she is offered as a witness, and not as to whether she was the wife at the time the cause of action accrued, or the occurrence transpired, about which she is expected to testify.

3.    **APPEAL AND ERROR**—Conflicting Evidence—Review.    Where
the evidence on an issue of fact is conflicting, this court will not
examine the same to determine where the weight lies but if
there is any evidence reasonably tending to support the verdict
the same will not be disturbed on appeal.

(Syllabus by Robertson, C.)

*Error from District Court, Osage County;*
*John J. Shea, Judge.*

Action by David Bradley & Co. against A. S. Sands to re-
cover a money judgment. From a judgment for plaintiff, de-
fendant brings error. Affirmed.

*Boone, Leahy & MacDonald,* for plaintiff in error.

*Hainer, Martin, Bush & Murry,* for defendant in error.

Opinion by ROBERTSON, C. This was an action to re-
cover from defendant the sum of $500, together with interest
thereon at 6 per cent. from August 31, 1901. Plaintiff, in its
petition, charged that defendant, in 1901, was a practicing at-
torney at Wilber, Saline county, Neb.; that in 1894 it obtained
a judgment in the district court of said county against Wilder
& Nelson in the sum of $1,252.16; that said judgment was placed
in the hands of defendant for collection; that he collected there-
on the sum of $500 on August 31, 1901, and failed to remit the
same, but, on the contrary, converted it to his own use; that said
collection so made by said attorney was not known by plaintiff
until subsequent to 1907, after defendant had removed from
Nebraska to Oklahoma. Defendant answered by general de-
nial, and a trial was had to a jury, which resulted in a verdict
in favor of plaintiff and against defendant in the sum of $749.75,
on which judgment was entered. Motion for new trial was pre-
sented and overruled, and defendant appeals.

Two questions are presented by the record for our con-
sideration; the first being: The court erred in excluding the
testimony of Mrs. Mable D. Sands, the wife of defendant.

Defendant does not claim that she was a competent witness
by reason of her being his agent, or jointly interested in the ac-
tion, but upon the grounds that at the time the transaction took

place, about which she was to testify, she was not the wife, but the stenographer, of defendant, and that the statute prohibiting the wife from testifying for or against the husband clearly intended only to prevent the wife or husband from giving evidence for or against each other concerning a transaction or communication during coverture. We cannot find such an exception to the statute; nor has counsel directed us to any authority sustaining such contention. Subdivision 3 of section 5842, Comp. Laws 1909, reads as follows:

"Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation subsisted, or afterwards."

This statute was called into existence on the grounds of public policy. It is based upon the marital relation, and has been universally upheld by the courts. In volume 6, Ency. Ev. p. 847, it is said:

"Various reasons were assigned for this rule of exclusion. Among these were the supposed bias of affection, fear of sowing dissensions between man and wife, occasioning perjury, and the like. The most usual reason, however, given for this rule of exclusion was partly identity of interest, and partly the necessity of guarding the security and confidence of the marriage relation; the objection of interest applying more particularly to their being witnesses in favor of each other, and the objection of public policy applying to their being witnesses against each other."

Mr. Justice Trunkey, in *Darlington's Appeal*, 86 Pa. 519, 27 Am. Rep. 726, in discussing the reasons for the prohibition of the parties testifying who sustain such confidential relations, said:

"The foregoing principles are too familiar for citation of text-book or report. It is equally unnecessary to show by authority that the most dominant influence of all relations is that of the husband over his wife. From the proud and untutored savage to the cultured and refined Anglo-American, the wife is affectionately anxious to please her husband. This is first in her heart, whether she is in the menial service of a rude hut, or in daily toil for the support of her family, or in charge of a

mansion. When he commands, she obeys; when he persuades, she yields; when he gently hints a wish, she grants; when treated almost as a servant, when governed and corrected as a child, as did our sturdy ancestors, or when confided in as a companion and equal, her will is subdued to her lord. * * * The common-law rights and disabilities consequent on marriage grew out of these differences, and the husband's power and influence distinctly appear. 'By marriage the husband and wife are one person in law; that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband.' * * * Under advancing culture and civilization, modern legislation has materially changed the common law respecting the rights incident to the marriage relation. In Pennsylvania the wife may hold and enjoy her own property, and easy modes are provided for her disposal of it. But the unity of person remains, resting on foundation older than the common law, and the husband's influence over his wife, so strongly expressed by the common-law writers, will end only with the marriage relation itself."

The competency of the wife as a witness depends upon the relationship at the time of the trial, when she is offered as a witness, and not as to whether she was the wife at the time the cause of action accrued, or the occurrence transpired, about which she is expected to testify. The statute will not bear any other construction; and as defendant does not claim she was acting as his agent, or that she had a joint interest in the action, or that she was in any other manner qualified as a witness, under the statute, it must be held that there was no error in the ruling of the trial court on the subject.

The next assignment of error urged is that the court erred in refusing to pass upon the weight and sufficiency of the evidence. In overruling the motion for a new trial, the court said that he felt that the jury should be the final arbiters of the fact, where there was any evidence at all for them to pass upon. Whether the trial court made use of such language or not would be a matter of no moment in passing upon the question as to whether or not a new trial should be granted. The general rule followed by the courts of this state is that, where the evidence on an issue of fact is conflicting, the court will not examine the same to determine where the weight lies; but if there is any evi-

dence in the record tending reasonably to support the verdict the same will not be disturbed on appeal. The determination of questions of fact is always for the jury. The cases cited in the brief of plaintiff in error do not sustain his contention. The authorities referred to are not applicable to the case at bar. Here there was presented squarely to the jury certain issues of fact. Under these issues testimony was offered by both parties. The court submitted the issues to the jury, which by its general verdict resolved them all in favor of the plaintiff. We have read the evidence submitted, and find that it reasonably tends to support the verdict of the jury; and such being the case the judgment rendered thereon is not reviewable here. *Armstrong, Byrd & Co. v. Crump,* 25 Okla. 452, 106 Pac. 855; *Caddo Nat. Bank v. Moore,* 30 Okla. 148, 120 Pac. 1003; *Grimes v. Wilson,* 30 Okla. 322, 120 Pac. 294; *Prescott v. Brown,* 30 Okla. 428, 120 Pac. 991; *Edwards v. Miller,* 30 Okla. 442, 120 Pac. 996; *Allen v. Kenyon,* 30 Okla. 536, 119 Pac. 960; *St. L. & S. F. R. Co. v. Young,* 30 Okla. 588, 120 Pac. 999; *Bland v. Peters,* 30 Okla. 798, 120 Pac. 631.

Finding no error in the record, the judgment of the district court of Osage county should be affirmed.

By the Court: It is so ordered.