### The State of Connecticut *vs.* Peter Volpe.

Third Judicial District, Bridgeport, April Term, 1931.
Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued April 23d—decided June 1st, 1931.

*John P. Knox* and *George E. Beers*, with whom, on the brief, was *William C. Rungee*, for the appellant (the accused).

*William H. Comley*, State's Attorney, with whom, on the brief, was *Lorin W. Willis*, Assistant State's Attorney, for the appellee (the State).

AVERY, J. The information charges that December 15th, 1930, at Stamford, the accused did carnally abuse Margaret Yacakowski, a minor of the age of fourteen years. On the trial, the State claimed to have proved illicit relations between the parties on that day, and on several occasions between October 1st, 1930, and December 15th of the same year; and that she, at the time, was a minor fourteen years of age. Further, the State claimed to have proved that January 23d, 1931, they were married in Westchester County in the State of New York; and, thereafter, on several occasions, had sexual intercourse at Greenwich, Fairfield County, in the State of Connecticut. The accused claimed to have proved by the evidence that no illicit relations before their marriage had occurred within the State of Connecticut; that after the marriage January 23d, 1931, the parties lived together as husband and wife at Greenwich. A verdict of guilty having been rendered by the jury, the accused moved to set it aside upon the ground, among others, that no crime was shown to have been committed within the State of Connecticut. The motion was denied. The appeal presents the questions growing out of the action of the court upon this motion, and also certain rulings upon evidence and instructions to the jury.

At the trial, Margaret was called as the first witness by the attorney for the State, who, after inquiring her age, and if she was acquainted with the accused, asked whether, during any part of the summer of 1930, she had sexual intercourse with him. She declined to answer this question; and, in response to inquiries by the court, testified she married the accused in Rye, New York, January 23d, 1931, and had lived with him as his wife until the time of the trial in a house owned by his parents. A certificate of a justice of the peace of Rye, New York, attesting the solemnization of the

marriage by him there on that day, was then offered and received in evidence. The witness, still declining to testify against the accused and claiming privilege in so doing as his wife, the court, after hearing argument, ruled she was not entitled to privilege and informed her that she must testify under penalty of severe punishment. To this ruling, exception was duly taken, and error is assigned therein. Subsequently, in her testimony, she stated that to obtain the marriage license she misrepresented her age to the clerk at Mamaroneck, New York, who issued it, by stating to him that she was twenty-one years old.

Under the law of New York, a marriage between persons of nonage is not void until its nullity is declared by a court of competent jurisdiction, and such nonage does not of itself constitute an absolute right to the annulment of such marriage; "but such annulment shall be in the discretion of the court which shall take into consideration all the facts and circumstances surrounding such marriage"; Cahill's Consolidated Laws of New York, 1930, Chap. 14, § 7; *Cunningham* v. *Cunningham,* 206 N. Y. 341, 99 N. E. 845, 847; *Smith* v. *Smith,* 221 N. Y. Supp. 672, 673; *Wolf* v. *Wolf,* 185 N. Y. Supp. 37, 39; and this is so, even though the applicant may be punishable for making a false statement as to age. *Kellogg* v. *Kellogg,* 203 N. Y. Supp. 757, 765. The marriage between the parties was not void but voidable; *Gould* v. *Gould,* 78 Conn. 242, 249, 61 Atl. 604; and being voidable only, Margaret, at the trial, had the same right to testify or decline to do so as any married woman would have in a criminal case involving her husband as the accused.

General Statutes, § 6480, provides: "Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial; and, if such person shall have a hus-

band or wife, he or she shall be a competent witness but may elect or refuse to testify for or against the accused, except that a wife when she shall have received personal violence from her husband or shall be a woman described in section 6227 or 6239 may, upon his trial for offenses arising out of such personal violence or for violation of the provisions of either of said sections, be compelled to testify in the same manner as any other witness." It is conceded that §§ 6227 and 6239 have no bearing upon the case presented in this record. The contention of the State is that carnal connection with a female under the age of consent is "personal violence" within the meaning of the statute; and that though she may thereafter marry the man, she has not the option to refuse to testify against him as to what may have occurred between them before marriage. These contentions cannot be supported, except by straining the language of the statute. It is difficult to see how personal violence received by a woman before marriage from a man whom she afterward marries can be said to be "personal violence from her husband"; because, at the time the violence was received, he was not her husband. We think, therefore, that the exception in the statute compels a married woman to testify only in case the "personal violence" was received by her after marriage; that for violence received before marriage, she has the same privilege of refusing to testify against her husband as she would in regard to any other crime charged against him. This conclusion is supported by the overwhelming weight of authority. *State* v. *Frey,* 76 Minn. 526, 79 N. W. 518; *Miller* v. *State,* 37 Tex. Crim. 575, 40 S. W. 313, 314; *People* v. *Schoonmaker,* 117 Mich. 190, 75 N. W. 439; *People* v. *Souleotes,* 26 Cal. App. 309, 146 Pac. 903, 904; *Sands* v. *David Bradley & Co.,* 36 Okl. 649, 129 Pac. 732, 45 L. R. A. (N. S.) 396, and

note; *Norman.*v. *State*, 127 Tenn. 340, 155 S. W. 135, 45 L. R. A. (N. S.) 399, 401; *United States* v. *White,* 4 Utah, 499, 501, 11 Pac. 570. It is urged with great earnestness, on behalf of the State, that unless such evidence can be compelled, crimes of this nature will frequently go unpunished. This claim overlooks the fact that our statute does not render the wife an incompetent witness against her husband but permits her to testify or to refuse at her option. It is not apparent to us that the ends of justice require that a woman who marries a man freely and lives with him as his wife, should be compelled against her will to undergo the mortification and humiliation of being compelled to testify that before their marriage and while she was under sixteen, illicit relations existed between them. *People* v. *Curiale,* 137 Cal. 534, 70 Pac. 468, 59 L. R. A. 588, 590. The ruling of the court in compelling the wife to testify and overruling her claim of privilege was prejudicial error.

In the course of her examination by the attorney for the State, Margaret was asked if she had not told the probation officer that she had improper relations with the accused at Halloween Park in Stamford. She admitted making such a statement to the probation officer; but said it was not true in fact, that no impropriety had ever occurred between them at that place; and that the reason why she said so was because she was nervous and the probation officer kept asking, but she never meant Halloween Park. Evidence of a contrary statement made by a witness out of court when admissible is allowed for the purpose of affecting credibility and weakening the force of the testimony. It is not evidence of the fact. *Wilcox* v. *Downing,* 88 Conn. 368, 375, 91 Atl, 262; 2 Wigmore on Evidence (2d Ed.) § 1018, p. 460. In its charge to the jury, the court, in referring to this testimony, said: "The

State's Attorney points out to you that the girl testifies that she told the probation officer that these relations with this man took place in Halloween Park, in Stamford, but she says, upon the witness stand, that that statement was not true; so the State claims to have proven, beyond a reasonable doubt, that such relation did take place between this man and this woman within the State of Connecticut." In the connection in which this language was used, it appears that the jury must have understood they were permitted to consider, as proof of wrongdoing within the State of Connecticut, Margaret's statement made to the probation officer out of court, the truth of which she flatly denied when upon the witness stand. We think these remarks of the court were error, prejudicial to the accused.

The only evidence tending to prove any improprieties between these parties before the time of their marriage, was that of Margaret and the accused. There is nothing in the record to show any wrongdoing at Stamford or anywhere else December 15th, the date mentioned in the information. On earlier dates, Margaret said they went out in an automobile from Greenwich; that she was accustomed to drive with the accused around New York; that the car was parked at times on a back road somewhere but she did not know whether in New York or Connecticut. The accused himself admitted improper relations in Westchester County in New York on several occasions but did not know whether or not there had been any improprieties between them in Connecticut. He denied any acts at Stamford or in Cos Cob—a part of Greenwich. The most that could be inferred from this evidence is that they took rides together from Greenwich in the direction of New York, and drove around White Plains and Westchester in New York; that on some of those

rides improper relations between the parties took place; whether in New York or Connecticut, neither was able to state with any definiteness. As the business center of Greenwich is only about two miles from the boundary line, and Margaret had testified that their relations had never occurred in the city, it is uncertain and a matter of conjecture whether any crime was committed by the accused in the State of Connecticut. It is a general rule of universal acceptation that one State or sovereignty cannot enforce the penal laws of another, nor punish offenses committed in and against another State or sovereignty. 16 Corpus Juris, 149; *Cristilly* v. *Warner*, 87 Conn. 461, 463, 468, 88 Atl. 711; *Huntington* v. *Attrill*, 146 U. S. 657, 669, 13 Sup. Ct. 224; *Charles* v. *People*, 1 N. Y. 180, 184.

It is urged by the attorney for the State that even if no crime was shown before the marriage, yet their living together as man and wife at Greenwich constituted a violation of General Statutes, § 6240, and constitutes carnal abuse of a female under the age of sixteen years within its provisions. This claim is untenable. Marriage of persons under sixteen years of age is permitted under certain circumstances. General Statutes, § 5149. We are not aware of any decision of any court which has held criminal, and subject to punishment, voluntary relations of the character described between husband and wife. The motion of the accused to set aside the verdict should have been granted.

It is unnecessary to discuss the other rulings on evidence.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.