### State of Connecticut *v.* Donald W. Durga

Appellate Division of the Circuit Court

File No. CR 10-28571

Argued June 10—decided July 5, 1968

*Matthew Shafner,* of Groton, for the appellant (defendant).

*Michael A. Rakosky,* assistant prosecuting attorney, for the appellee (state).

Kosicki, J. The information charged the defendant with having violated General Statutes § 53-81 in committing wilful injury to a private building in Norwich on December 7, 1967. After a trial to the court the defendant was found guilty and sentenced, and he has appealed. The statute provides for the imposition of criminal penalties upon "[a]ny person who wilfully injures any building other than a

public building." In his motion to correct the finding, the defendant requests a change in phraseology in but one paragraph of the finding. This was denied by the trial court. From all of the evidence and the fair inferences which could be drawn therefrom, as well as the circumstances surrounding the case, we are of the opinion that the finding should not be disturbed.

The court could reasonably have found the following facts. On December 7, 1967, a Thursday, about 8 p.m., David Trachtenberg, while inside his store, Trachtenberg's, 150 Main Street, Norwich, which was open for business, heard a crash of glass. A rock, about six inches in diameter, he discovered, had broken a window in the front of the store. Trachtenberg went outside, saw the defendant, Donald W. Durga, whom he had known for seven or eight years, and who had, six or seven years ago, worked for Trachtenberg's, standing about ten feet from the window on the sidewalk in front of the store, and said "Hello." At the time there were a number of other people on Main Street. About a half hour later, around 8:30 p.m., Frank Davis, a boy fourteen years old, came to Trachtenberg, told him his name, and said that he saw the defendant throw the rock through the window. As a result of this information Trachtenberg made a complaint to the police officer investigating the incident, which had taken place on his beat. At about 10:45 o'clock on the same night, Davis gave the police a signed and sworn statement, in the presence of his mother, as to what he saw take place. This statement was needed to support the issuance of an arrest warrant against the defendant. Frank Davis was about twenty feet from Donald Durga when he saw him throw a rock at the window. At the trial, Davis was presented as a witness for the state. He testified that it was not Donald Durga who threw the rock

but that it was someone who looked like Francis Durga, a brother of Donald. Francis Durga was at that time on duty at Maguire Air Force Base and was not in Norwich on December 7, 1967. Donald Durga, prior to the trial, visited at the home of Frank Davis, and had a conversation with him. There is a strong family resemblance between Donald Durga and Francis Durga. Both Francis Durga and Donald Durga have an acne condition on their faces. Francis and Donald Durga have the same color of hair, and the same profile.

The court concluded that (1) the defendant was guilty of the offense charged beyond a reasonable doubt; (2) the statement of Frank Davis was given to the police voluntarily and without duress; (3) Frank Davis, as a result of the visit of the defendant before trial, was put in fear and was afraid of Donald Durga, and his testimony was influenced by this fear; and (4) upon the facts and reasonable inferences therefrom the defendant was guilty as charged.

In his assignment of errors, the defendant attacks the court's finding in its failure to adopt the defendant's phraseology in the finding of a subordinate fact; error is also assigned in the conclusions stated above, in the admission of the written statement of Davis as an exhibit, and the conclusion upon all the evidence that the defendant was guilty of the crime charged beyond a reasonable doubt. We need to consider only the last question, since the general assignment requires an examination by us of all the evidence, and such a claim must be determined by the evidence and not by a finding of facts. Practice Book § 995; *State* v. *Salvaggio,* 152 Conn. 716, 717. This would necessarily include the claim relating to the propriety of admitting the challenged exhibit.

With regard to the latter, the defendant correctly contends that an extrajudicial statement made by a witness before trial cannot be used at the trial to prove the matters stated therein but only to affect the credibility of the witness. *Sears* v. *Curtis,* 147 Conn. 311, 316; *Bomster* v. *Kenney,* 116 Conn. 290, 291; *State* v. *Volpe,* 113 Conn. 288, 292. Such a statement, standing alone, and without other evidence, direct or circumstantial, would obviously be insufficient to meet the burden resting on the state to prove its case. That is not the situation here. The trial court is the final judge of credibility of a witness and may believe or disbelieve the testimony of a witness in whole or in part. *State* v. *Coulombe,* 143 Conn. 604, 607. The statement was not offered by the prosecution to prove its case but to determine whether the defendant had, after his arrest, attempted to interfere with the course of justice by inspiring fear in Davis that harm would befall him if he identified the defendant as the person who committed the admitted crime. The defendant was a man twenty-seven years old; Davis was a boy of fourteen. The court was the best judge of the demeanor of the witness and had found that Davis, in his testimony, was apprehensive of what reprisal the defendant might indulge in. "A witness may always be asked about inconsistent statements." *State* v. *Walters,* 145 Conn. 60, 66; see *State* v. *Bradnack,* 69 Conn. 212, 216, 217.

It is clearly apparent from the evidence that the defense was centered on the sole issue of identification. It sought to infuse doubt, not on the issue that the crime charged had been committed, but that it may have been the defendant's brother and not the defendant who had committed the crime. This effort to cast uncertainty on the identification of the culprit is disposed of by the defendant's own testimony. He asserted that he strongly resembled his brother;

their hair was of the same color; their profiles were much the same; their complexions were similar and were reddish because each had an acne condition; and it was possible that one could be mistaken for the other at a distance. What is more important, however, is that the defendant's testimony completely eliminated his brother Francis Durga as a suspect. He said it was absolutely impossible for his brother to have been in Norwich at the time and place of the crime because he was on military duty at Maguire Air Force Base. On the other hand, the defendant admitted being about five or ten feet in front of the store window with no one in front of him and no people near him whom he could recognize. In our opinion there was sufficient evidence to sustain the court's conclusion that the defendant's guilt of the offense charged had been established beyond a reasonable doubt.

There is no error.

In this opinion WISE and MACDONALD, Js., concurred.