STATE OF CONNECTICUT *v.* ROBERT L. BEVERLY
(14337)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

*(One justice dissenting)*

Argued September 29, 1992—decision released January 12, 1993

*Carl D. Eisenman,* public defender, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *Frank S. Maco,* state's attorney, *David Shepack,* assistant state's attorney, and *John McKinney,* law student intern, for the appellee (state).

CALLAHAN, J. The defendant, Robert L. Beverly, a resident of Pittsfield, Massachusetts, was charged with and convicted by a jury of murder in violation of General Statutes (Rev. to 1991) § 53a-54a.[1] The crime allegedly occurred in North Canaan, Connecticut. The defendant was sentenced by the trial court to a term of imprisonment of fifty-five years. He appeals to this court pursuant to General Statutes § 51-199 (b) (3).[2]

The victim, Marilyn Bigelow, had also been a resident of Pittsfield, Massachusetts. Her severely decomposed body was found hidden in heavy brush in a limestone quarry in North Canaan, on July 11, 1990. That date was approximately three months after the victim had last been seen alive, with the defendant, in his automobile at 2:34 a.m. on April 14, 1990, on Route 7 in Lee, Massachusetts. Earlier that evening, the defendant and the victim had been in each other's company during a night of socializing, bar hopping, and cocaine use in Pittsfield. The victim never returned home and was never again seen by her family or friends subsequent to April 14, 1990.

[1] General Statutes (Rev. to 1991) § 53a-54a provides in relevant part: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[2] General Statutes § 51-199 (b) (3) provides in pertinent part: "(b) The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

The cause of the victim's death was certified by the state medical examiner, Edward M. McDonough, to be multiple blunt traumatic injuries of the head, neck and torso. The victim's death was certified by the medical examiner as a homicide. Because of the advanced state of decomposition of the victim's body, McDonough was unable to determine the time of death or whether all of the massive trauma the victim had suffered had been inflicted antemortem or postmortem. Henry C. Lee, a forensic expert called by the state, testified on cross-examination that he was unable to say positively from the photographic evidence submitted to him whether the victim had been killed at the place where her body was found.

I

The defendant initially claims that the geographic location of the crime is a component of the corpus delicti that the state must prove. He argues that, because both the victim and the defendant had significant ties to Massachusetts and because the victim had last been seen alive in Massachusetts, months before her body was found in Connecticut, the corpus delicti of the charged crime of murder had not been established to be in Connecticut. He contends, therefore, that the judgment of conviction rendered by the trial court should be reversed and a judgment of acquittal rendered.[3] We are not persuaded.

In *State* v. *Tillman,* 152 Conn. 15, 20, 202 A.2d 494 (1964), we adopted Professor Wigmore's definition of

---

[3] At trial, the defendant objected to the admission of certain incriminating evidence on the ground that the state had failed to establish that the corpus delicti existed in Connecticut. He does not appear to pursue these particular claims on appeal, but rather seems to contend that because the state failed to demonstrate the existence of the corpus delicti in Connecticut he should be acquitted for the lack of sufficient properly admitted evidence.

corpus delicti that limits the required showing of the corpus delicti of a crime to the specific kind of loss or injury embraced in the crime charged. 7 J. Wigmore, Evidence (3d Ed. 1940) § 2072, pp. 401, 403. "[I]n a homicide case, the corpus delicti is the fact of the death, whether or not feloniously caused, of the person whom the accused is charged with having killed or murdered." *State* v. *Tillman*, supra. There is nothing in this definition that suggests that proof of the site where the victim was killed is a necessary component of the corpus delicti of a homicide.

The corpus delicti rule is a rule of evidence intended to protect an accused from conviction as a result of a baseless confession when no crime has in fact been committed. *State* v. *Arnold*, 201 Conn. 276, 287, 514 A.2d 330 (1986); *State* v. *DelVecchio*, 191 Conn. 412, 427, 464 A.2d 813 (1983); *State* v. *Halstead*, 414 A.2d 1138, 1143 (R.I. 1980). The purpose of the rule would not be furthered by a requirement that the place of death be a necessary adjunct.

Here, it is undisputed that the dead body found in North Canaan was that of the alleged victim. The necessary factors to constitute the corpus delicti in accordance with the standard enunciated in *Tillman* were therefore present. The defendant's first claim is without merit.

## II

The defendant next claims that the trial court had no territorial jurisdiction to adjudicate the charge against him because the state failed to prove beyond a reasonable doubt that the victim had been murdered in Connecticut. The state acknowledges that the trial court would not have had jurisdiction of the crime without proof by the state that the victim had been killed within Connecticut's territorial boundaries. See *State* v. *Volpe*, 113 Conn. 288, 294, 155 A. 223 (1931); Gen-

eral Statutes § 51-1a (b);[4] A. Spinella, Connecticut Criminal Procedure (1985) § 3A, pp. 18–19.

At the conclusion of the state's case, the defendant moved for a judgment of acquittal, claiming that the trial court lacked territorial jurisdiction. The court, at that time, ruled that the evidence in the record supported its jurisdiction over the offense. Later, following his conviction, the defendant filed a motion in arrest of judgment, again arguing that the court lacked jurisdiction because there was insufficient evidence that the crime with which he had been charged had occurred in Connecticut. He maintained that it was the state's burden to prove the facts underlying the court's territorial jurisdiction beyond a reasonable doubt and that the state had failed to do so. The trial court agreed with the defendant that the state had the burden of proving the court's jurisdiction beyond a reasonable doubt.[5] It concluded, however, that the state had satisfied its burden and denied the defendant's motions. We conclude that there was ample evidence to support the trial court's rulings and its determination that it had territorial jurisdiction to try the crime charged.

There was evidence from which the court could reasonably have found the following facts. The victim was alive and a passenger in the defendant's car when it was stopped for speeding by a local police officer on Route 7 in Lee, Massachusetts, at 2:34 a.m. on April 14, 1990. The officer who stopped the defendant's automobile and a backup officer identified the victim as

---

[4] General Statutes § 51-1a provides in pertinent part: "(b) The territorial jurisdiction of the supreme court, the appellate court, and the superior court shall be coextensive with the boundaries of the state."

[5] The state does not agree with the trial court that the necessary quantum of proof was "beyond a reasonable doubt." It contends that its burden was to prove territorial jurisdiction only by a preponderance of the evidence. Because the trial court applied the higher standard in this case, it is not necessary that we reach this issue.

being the passenger in the defendant's automobile. After receiving a verbal warning from the officer, the defendant proceeded to drive his automobile south on Route 7 toward the Connecticut border. Approximately one hour later, the defendant stopped at the home of acquaintances of his, Fred White and Margaret Macia, in Salisbury, Connecticut. While White and the defendant talked in the kitchen of the residence, Macia observed the silhouette of a person seated in the front passenger seat of the defendant's automobile that was parked in the road in front of the house. The White/Macia house in Salisbury is only seven miles and less than thirteen minutes driving time away from the limestone quarry in North Canaan where the victim's body was found.

The quarry road was covered with limestone and limestone dust was regularly dumped there.[6] Limestone dust and pebbles were found embedded in the grooves in the soles of the victim's sneakers, indicating that the victim had been walking upright when the material became embedded. No such accumulation of material could have occurred had the victim been carried or dragged along the quarry road. No trace of limestone residue was found on the passenger side floor mat of the defendant's vehicle to indicate that the victim had returned to the car after walking on the quarry road. Although the victim's wounds would have caused considerable bleeding, there was no evidence of bloodstains of the victim's blood type detected in the defendant's vehicle to indicate that she had been transported subsequent to the infliction of her injuries.

Moreover, there was evidence that in early May, 1990, prior to the victim's body having been found, the

---

[6] The defendant had once lived in the area of the quarry, which was owned by the Pfizer Corporation, by whom the defendant had previously been employed.

defendant told a longtime friend, Timothy Dozier, while visiting Dozier in Waterbury, that he had killed a girl and needed a place to hide from the police. He said that he had buried the victim alive behind his mother's house in Canaan. There was also testimony that the defendant's family had once lived in North Canaan within walking distance of the quarry where the victim's body was found. The defendant's argument that there was insufficient evidence to establish the trial court's territorial jurisdiction is unavailing.

### III

The defendant's final claim is that the jury, not the trial court, should have made the decision concerning the sufficiency of the facts proven to establish territorial jurisdiction in Connecticut. Accordingly, the defendant, prior to closing arguments, requested that the trial court instruct the jury that it must, in order to convict him, find that the state had proven beyond a reasonable doubt that the victim had been murdered in Connecticut. The trial court refused to give the requested instruction, reasoning that the site where the victim's death occurred was not an element of the crime. The defendant excepted to the court's ruling.

The duty of the trial court required that it "submit to the jury all controverted questions of fact relating to an element making up [the] crime." *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077 (1975). Generally, the elements of a crime are spelled out in the statute defining the crime, or in the absence of specific statutory guidance are provided by the common law.[7] 1 W. LaFave & A. Scott, Substantive Criminal Law (1986) § 1.8 (b) n.13. Section 53a-54a, in setting forth

---

[7] According to 1 W. LaFave & A. Scott, Substantive Criminal Law (1986) § 1.8 (b) n.13, the elements of a crime are "its requisite (a) conduct (act or omission to act) and (b) mental fault (except for strict liability crimes)—plus, often, (c) specified attendant circumstance, and, sometimes, (d) a specified result of the conduct."

the elements of murder, does not state that the physical location of the murder is part of the offense.

Consequently, we have held that the location of the site of the victim's death is not an element of the crime of murder. *State* v. *Weinberg,* 215 Conn. 231, 252, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990). Although some authorities have held otherwise; see, e.g., 1 W. LaFave & A. Scott, supra, § 2.7 (b), and cases cited therein; see also, e.g., *McKinney* v. *State,* 553 N.E.2d 860, 863 (Ind. App. 1990); Model Penal Code § 1.13 (9) (e); we agree with the decisions holding that the question of where a murder occurred generally is not an element of the offense, but is merely an issue of territorial jurisdiction to be decided by the court. *Mitchell* v. *United States,* 569 A.2d 177, 180 (D.C. App. 1990); *Mundine* v. *United States,* 431 A.2d 16, 18 (D.C. App. 1981); *Adair* v. *United States,* 391 A.2d 288, 290 (D.C. App. 1978); *State* v. *Reldan,* 185 N.J. Super. 494, 506, 449 A.2d 1317 (1982) (whether murders occurred in New York or New Jersey); *State* v. *Aguilar,* 85 Or. App. 410, 736 P.2d 620, 621 (1987); *State* v. *Halstead,* supra, 1144 (whether murder occurred in Rhode Island or New Jersey). A defendant's constitutional right to a jury does not extend beyond the factual issues that are relevant to the ultimate question of guilt or innocence under the relevant statute. See, e.g., *Hildwin* v. *Florida,* 490 U.S. 638, 109 S. Ct. 2055, 104 L. Ed. 2d 728 (1989); *State* v. *Valencia,* 121 Ariz. 191, 589 P.2d 434 (1979); *People ex rel. Faulk* v. *District Court,* 673 P.2d 998 (Colo. 1983).

This conclusion is consistent with the principle that "[i]t is within the power of every court to determine whether or not it has jurisdiction of a proceeding brought before it." *Long* v. *Zoning Commission,* 133 Conn. 248, 249, 50 A.2d 172 (1946). It is therefore "sufficient to prove jurisdiction if the evidence, *as viewed*

*by the trial justice,* indicates that the crime occurred within the territorial jurisdiction of the court." (Emphasis added.) *State* v. *Halstead,* supra, 1144. In the instant case, the evidence, reasonably construed, was sufficient to establish territorial jurisdiction in Connecticut.[8]

The judgment is affirmed.

In this opinion PETERS, C. J., BORDEN and NORCOTT, Js., concurred.

BERDON, J., dissenting. I disagree with parts II and III of the majority opinion because I believe that the territorial jurisdiction issue should have been submitted to the jury. When the state's territorial jurisdiction is disputed and depends upon a determination of facts, it is within the province of the trier of fact—the jury in this case—to resolve the issue. *People* v. *Cullen,* 695 P.2d 750 (Colo. App. 1984); *Lane* v. *State,* 388 So. 2d 1022 (Fla. 1980); *State* v. *Darroch,* 305 N.C. 196, 212–13, 287 S.E.2d 856 (1982), cert. denied, 457 U.S. 1138, 102 S. Ct. 2969, 73 L. Ed. 2d 1356 (1982); *Commonwealth* v. *Bighum,* 452 Pa. 554, 558, 307 A.2d 255 (1973); 1 W. LaFave & A. Scott, Substantive Criminal Law (1986) § 2.7 (b), p. 163. The locus delicti, under these circumstances, becomes an element of the crime that the state is required to prove beyond a reasonable doubt.[1] Indeed, this court in *State* v. *Volpe,* 113 Conn. 288, 155 A. 223 (1931), assumed that jurisdiction was an issue for the trier of fact when it reviewed the trial court's instructions to the jury on the issue of jurisdiction, but reversed on other grounds.[2]

---

[8] If the view of the dissent were to prevail, it would require that a defendant be put through the expense, anxiety and uncertainty of a trial to resolve an issue of jurisdiction that could be resolved in a pretrial hearing. See *Long* v. *Zoning Commission,* 133 Conn. 248, 249, 50 A.2d 172 (1946).

[1] "We agree with the weight of authority that this territorial jurisdiction issue must be proved beyond a reasonable doubt. See annot., 67 A.L.R.3d 988 (1975)." *Lane* v. *State,* 388 So. 2d 1022, 1029 (Fla. 1980).

[2] In *State* v. *Volpe,* 113 Conn. 288, 155 A. 223 (1931), the state sought to prove that the defendant had carnally abused a fourteen year old girl

The majority's reliance on *State* v. *Weinberg,* 215 Conn. 231, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990), is misplaced. The issue in *Weinberg* was whether the state, having alleged in the information that the crime had been committed "at or near the town of Southbury," was required to prove the specific location within Connecticut of the crime alleged in the information. The defendant in *Weinberg* never claimed that the crime occurred in any state other than Connecticut so as to deprive the Connecticut court of jurisdiction. Because the court did not consider the issue of territorial jurisdiction, but merely whether the state was required to prove that the murder occurred in the town alleged in the information, *Weinberg* is inapposite to the facts of this case.

The majority also relies on *Adair* v. *United States,* 391 A.2d 288 (D.C. App. 1978), and its progeny to support its conclusion that the issue of where the murder occurred was a question for the trial court. In *Adair,* the defendant claimed that the trial court erred by refusing to instruct the jury that if it found that the crimes had occurred in Maryland, it was required to find the defendant not guilty. The court rejected the defendant's claim because it was conceded that part of the defendant's criminal conduct was committed in the District of Columbia, thereby presenting a question of law as to whether the District of Columbia had

on December 15, 1930, in Stamford, Connecticut. The defendant claimed that he and the alleged victim were married in Westchester County, New York, on January 23, 1931, and that no illicit relations had occurred in Connecticut before their marriage. After a jury verdict of guilty, the defendant moved to set aside the verdict, claiming, among other things, that the state had not proved that illicit relations occurred in Connecticut before the marriage. The motion was denied. On appeal, the court found error and ordered a new trial. Although the court did not explicitly consider whether territorial jurisdiction is a jury issue, it implied that it is by reviewing the trial court's instructions to the jury on this very issue. *State* v. *Volpe,* Connecticut Supreme Court Records and Briefs, April Term 1931, part 3, p. 1559.

jurisdiction on that basis. Only in dicta did the court note that "the question of jurisdiction is not one of fact for the jury." Id., 290. Moreover, the dicta in *Adair* relies solely on *United States* v. *Berrigan,* 482 F.2d 171 (3d Cir. 1973). *Berrigan* did not consider the territorial jurisdiction issue, but was concerned with the issue of discriminatory prosecution. Having undermined the foundation for *Adair,* the remaining cases relied upon by the majority lose their authority as well.[3]

The defendant in this case raised in a timely fashion substantial factual questions regarding the location of the crime and the territorial jurisdiction of the court. The issue should have been submitted to the jury.

Accordingly, I dissent.

---

[3] The majority relies on *Mitchell* v. *United States,* 569 A.2d 177 (D.C. App. 1990), *Mundine* v. *United States,* 431 A.2d 16 (D.C. App. 1981), and *State* v. *Reldan,* 185 N.J. Super. 494, 449 A.2d 1317 (1982), to support its claim that jurisdiction is not an issue of fact for the jury. These cases rely solely on *Adair* v. *United States,* 391 A.2d 288 (D.C. App. 1978). *State* v. *Aguilar,* 85 Or. App. 410, 736 P.2d 620 (1987), the only other case relied upon by the majority, cites absolutely no authority for its conclusion that the question of jurisdiction is not a question of fact for the jury.