[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON REMITTITUR
After a jury trial arising out of a fall by the plaintiff on property of defendant Burger King Corporation, plaintiff was awarded total damages of $199,500, broken down as:
Past Economic Damages $43,848.33
Future Economic Damages 40,000.00
Past Noneconomic Damages 84,848.67
Future Noneconomic Damages 41,303.00
Total $210,000.00
The jury found plaintiff to be 5% contributorily negligent and deducted $10,500.00 from the above total, arriving at a verdict of $199,500. The court accepted the verdict and advised it recorded.
Thereafter, defendant filed a motion for remittitur of the portion of the verdict found as future economic damages only based on its contention that there was insufficient evidence presented to justify same. The court disagrees.
Dr. Richard Matza, plaintiff's treating physician, testified that there was a reasonable medical possibility that plaintiff would incur future medical expenses as a result of this injury in question. Dr. Matza testified that there was a 15% chance that the hardware in plaintiff's leg would have to be replaced and also testified that because of the injury and increased disability, plaintiff was rendered more unsteady on CT Page 1365-QQQ his feet and more at risk in walking. Dr. Matza testified that as a result of the instant injury and ensuing surgery, plaintiff's right leg is 2 inches shorter than the left and that as a result, plaintiff has decreased mobility and flexibility, decreased strength and loss of balance.
Although no definite figures were testified to as probable medical expenses, the court does not find that the amount awarded is excessive or exorbitant under the circumstances as a reasonable, probable estimate of what future damages will be taking into consideration the nature and severity of the injury and plaintiff's life expectancy.
Evidence adduced at trial is to be reviewed in the light most favorable to sustaining the verdict. Holbrook v. Casozza,204 Conn. 336, 360 (1987). The jury may consider the seriousness and the permanency of the injury in assessing damages.Wood v. Bridgeport, 216 Conn. 604 (1990).
A verdict may be set aside if it so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, mistake or corruption. Slabinski v. Dix,138 Conn. 625 (1952).
The court fails to so find and therefore denies defendant's Motion for Remittitur.
MEMORANDUM ON COLLATERAL SOURCES
KULAWIZ, J.
The above-captioned case comes before the court on defendant's post-judgment motion for hearing concerning reduction in economic damages for collateral source payments, specifically for Medicare payments and payments from medical insurance.
Plaintiff takes the position that Medicare payments should not be regarded as a collateral source because they are subrogable and that when premiums paid for medical insurance are deducted from payments for medical care, the difference is a negligible amount.
On October 25, 1995, the jury returned a verdict for plaintiff to recover from defendant past economic damages of CT Page 1365-RRR $43,848.33. Plaintiff had presented bills justifying said recovery. Further, the jury awarded future economic damages of $40,000.00, past noneconomic damages of $84,848.67, and future noneconomic damages of $41,303.00. The jury also found that plaintiff's own negligence contributed to the extent of 5%, equaling $10,500.00, and awarded plaintiff a total of $199,500.00, representing 95% of the total of economic and noneconomic losses found.
General Statutes 52-225A provides that
 In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages from . . . personal injury . . . occurring after October 1, 1987 . . . wherein liability is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages by an amount equal to the total amounts determined to have been paid under subsection (B) of this section [collateral source payments] less the total of amounts determined to have been paid under subsection (C) [amount paid to source benefits] of this section, except that there shall be no reduction for
 1) a collateral source for which a right of subrogation exists and,
 2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to 52-572M.
Pursuant to defendant's motion, a hearing was held on December 19, 1995, concerning collateral sources. Plaintiff concedes that he received payments from Medicare and from Blue Cross, Blue Shield. Medicare payments were in the total amount of $27,764.13. Past economic damages awarded totaled $43,848.33. Subtracting the Medicare payments from the $43,848.33 leaves a balance of $16,084.20 paid from Blue Cross, Blue Shield, a collateral source.
Plaintiff testified at trial and at the hearing on collateral sources that he had initially injured the leg in question in 1966. He further testified that he made payments for Blue Cross coverage from 1966 to 1990 at an average of $33 CT Page 1365-SSS a month. After 1990, his payments have been $257.70 a quarter. Defendant argues that an offset for premiums paid should only be allowed from February 14, 1994 (the date of plaintiff's injury) through the date of the verdict or judgment.
Plaintiff argues that credit for premiums paid should be calculated from 1966, when he first injured his knee which was reinjured in the present incident. However, plaintiff testified that he had received a knee replacement in 1991. Plaintiff claims that unless he had paid premiums for Blue Cross-Blue Shield coverage continually from 1966 until this 1994 injury, he could not have been insured. The court finds this argument to be in the extreme. However, the court will allow deduction for premiums paid to maintain coverage from plaintiff's knee replacement surgery which he had in 1991, which he claimed was necessary to secure his rights to collateral source benefit.
Pursuant to § 52-225A(2), there is to be no reduction for the amount equal or attributable to plaintiff's contributory negligence. The jury determined plaintiff's negligence to be 5%. Subtracting 5% or $804.21 from $16,084.20 leaves a balance of collateral source payment from Blue Cross-Blue Shield of $15,279.99.
The court allows no reduction for Medicare payments as federal law and regulations provide for a right of recovery of Medicare payments by HCFA of conditional payments made, i.e., Medicare payments for services for which another insurer is primary payer. [See 42 U.S.C.A. Sec. 1395y(B) and42 C.F.R. § 411.21] HCFA may initiate recovery as soon as it learns that payment has been made or could be made under . . . any . . . insurance. 42 C.F.R. § 411.21 (B).
It is the very nature of insurance and other benefit programs that enrollment prior to a covered claim gives rise to the entitlement to receive benefits. Accordingly, amounts paid to maintain coverage over a period of time can be fairly said to have been paid "to secure [the claimant's] right to any collateral source benefit which [he] has received as a result of such injury" within the meaning of subsection (c) of 52-225A.Mancini v. Ansonia-Derby Water Co., 14 C.L.R. 433 (1995). The legislative intent as to the meaning or scope of a statute is to be determined by an analysis of the language actually used in the legislation. Vaillancourt v. New Britain Mechanic/Litton,224 Conn. 381, 391 (1993). The statutory language in Sec. CT Page 1365-TTT52-225A does not limit the set-off of premiums to the period between injury and judgment but broadens it to the amount paid to "secure" the right to any collateral source benefit.
Using this analysis, therefore, the court will allow for quarterly payments of $257.70 or $1,030.80 from 1991 until the date of last medical treatment in April 1995. This would amount to $4,123.20 paid to secure plaintiff's right to collateral source. Having already reduced the collateral source by the percentage of plaintiff's negligence and arriving at the figure of $15,279.99 as the collateral source payment, the court reduces that figure by $4,123.20 paid for premiums. The remaining amount is $11,156.79.
The jury's verdict for plaintiff was $199,500.00. This court reduces the amount of that award pursuant to Sec. 52-225A in the amount of $11,156.79.
All other post trial motions having been denied with the exception of the motion for costs, judgment shall enter for plaintiff in the amount of $188,343.21. The plaintiff shall recover his costs.
KULAWI, J.