STATE

v.

Carlo BELLOLI.

No. 99–413–C.A.

Supreme Court of Rhode Island.

Feb. 15, 2001.

Lauren Sandler Zurier, Aaron L. Weisman, Providence, for Plaintiff.

Mark L. Smith, North Smithfield, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

Carlo Belloli (defendant or Belloli), argued in his appeal of convictions of first-degree murder and conspiracy that the trial justice erred by admitting into evidence enlarged autopsy photographs of the victim, by failing to require proof that the victim's death occurred in Rhode Island, and by resolving himself the question of jurisdiction over the crime rather than submitting this issue to the jury. We affirm the convictions.

### Facts and Procedural History

The defendant and a co-defendant, Adrian Bustamante, were tried together for the brutal murder of John Casserly (Casserly or victim). Neither defendant testified at the trial. A comprehensive recitation of the facts that led to the prosecution is reported in *State v. Bustamante,* 756 A.2d 758 (R.I.2000), and therefore we only briefly summarize the crime and defendant's participation therein. During the early morning hours of December 2, 1994, Casserly was beaten and stabbed by defendant, by Bustamante, and others at defendant's apartment in Woonsocket, Rhode Island, the motivation for which allegedly was a dispute over money. During the group attack, according to testimony of witnesses, defendant stabbed the victim at least ten times, "stomped" on his head, and

after retrieving a blanket from another room, instructed Casserly to "[b]leed on the blanket[,] not on the rug." The defendant also participated in the disposal of the body in Bellingham, Massachusetts. Witnesses to the murder testified that defendant threatened to kill them if they told anything to anyone concerning the events of the evening.

Belloli was convicted of murder in the first degree and conspiracy to murder, following a jury trial in the Providence County Superior Court; he was sentenced to a term of life without the possibility of parole after the jury's finding of torture and aggravated battery and to a concurrent ten-year sentence for conspiracy to commit murder.

The defendant has appealed the judgment of conviction, citing three errors: first, the admission into evidence of several enlarged autopsy photographs of the victim; second, the trial justice's failure to require the State of Rhode Island (state) to prove beyond a reasonable doubt that the victim's death, and not just the injuries that eventually led to his death, occurred in Rhode Island; and third, the trial justice's deciding himself the question of jurisdiction over the crime, rather than submitting this issue to the jury.

Additional facts will be provided as necessary to the legal analysis. For the reasons set forth below, we deny the appeal and affirm the convictions.

## Enlarged Photographs

The defendant contended on appeal that "because the [autopsy photographs] were enlargements of other photographs of the victim's injuries which had already been admitted into evidence, [the enlargements] were cumulative at best and, therefore, were not material and should have been excluded from evidence." He further argued that the justice abused his discretion in refusing to find, pursuant to Rule 403 of the Rhode Island Rules of Evidence, that the probative value of the enlarged photographs was outweighed by the danger of undue prejudice.

"As with the admission of evidence generally, determining the relevance of photographs is within the sound discretion of the trial justice." *State v. Spratt*, 742 A.2d 1194, 1198 (R.I.1999). Moreover, "[a] photograph is relevant if it has a tendency to 'prove or disprove some material fact in issue.'" *Id.* (quoting *State v. Rivera*, 640 A.2d 524, 526 (R.I.1994)). In a prosecution for murder, photographs "which are shown to be faithful representations of the victim at the time in question, are in the discretion of the trial court, admissible into evidence as an aid to the jury in arriving at a proper understanding of the evidence as proof of the corpus delicti, the extent of injury, the condition and identification of the body[,] or for their bearing on the question of the degree of atrociousness of the crime * * *." *State v. Winston*, 105 R.I. 447, 450, 252 A.2d 354, 356 (1969). When considering a challenge to the admission of photographs under Rule 403, "[o]ur function is to review the record and to determine whether the trial justice carefully considered whether the probative value of the evidence was outweighed by undue prejudice, 'keeping in mind that even if the evidence offered * * * might tend to influence the jury unduly, it may nevertheless be admissible if it is otherwise material and competent.'" *Spratt*, 742 A.2d at 1198 (quoting *State v. Griffin*, 567 A.2d 796, 801 (R.I.1989)). "The test is whether the photograph is 'of such a nature as to inflame the jurors and therefore prejudice them beyond the ordinary prejudice that is always sustained by the introduction of relevant evidence intended to prove guilt.'" *Id.* (quoting *State v. Beauchamp*, 671 A.2d 1238, 1241 (R.I. 1996)).

Belloli's co-defendant Bustamante also had objected to the admission of the enlarged autopsy photographs during trial, and in his separate appeal, Bustamante made essentially the same arguments with respect to the photos as Belloli does in the

instant appeal.[1] In deciding the issue in *Bustamante* we wrote:

> "[D]efendant argued that the trial justice committed reversible error by allowing as full exhibits four enlarged autopsy photographs. The state argued that the trial justice acted well within his discretion in admitting the enlargements for the purposes of illustrating the medical examiner's testimony and assisting the state in establishing the elements of torture and aggravated battery beyond a reasonable doubt. We agree. * * * Although gruesome, the photographs accurately represented the victim's condition following this brutal murder and were clearly relevant and necessary to the issue of torture and aggravated battery. Accordingly, we hold that the photographs were admissible at the trial court's discretion. *See Bettencourt*, 723 A.2d at 1108." *Bustamante*, 756 A.2d at 767.

In our opinion, the photographs provided "a proper understanding of the evidence as proof of the corpus delicti, the extent of the injury, the condition and identification of the body or for their bearing on the question of the degree of atrociousness of the crime." *State v. Smith*, 602 A.2d 931, 936 (R.I.1992). Moreover, because the state sought a life sentence without parole, pursuant to G.L. 1956 § 11–23–2, it bore the burden of proving torture or aggravated battery.

*Smith*, 602 A.2d at 936. The photographs provided direct evidence relevant to proving the elements required under the charges. Accordingly, we believe that our resolution of this issue in *Bustamante* was correct and that it applies to this case as well. Therefore, we reject Belloli's claim.

### Jurisdiction

■ The defendant next argued on appeal that the trial justice erred by not requiring that the state prove beyond a reasonable doubt that the victim's death, and not just the injuries that eventually led to his death, occurred in Rhode Island, and he asserted that the state failed to meet this burden. The defendant maintained at trial, and continued to maintain in this appeal, that because the medical examiner who testified at trial could not be certain of the time of death, the state had failed to prove whether the victim died in Rhode Island, where the evidence showed he had suffered the grievous injuries, or in Massachusetts, where the victim's body ultimately was discovered. Therefore, defendant contended, the state had failed to prove "territorial" jurisdiction.

Before closing arguments were made and the jury instruction was given, defendant requested that he be allowed to argue to the jury that the state must prove that the victim died in Rhode Island, and he made what the trial justice treated as a motion to pass for lack of jurisdiction.[2]

---

1. At trial, the trial justice discussed each enlarged photograph, eliciting comments and objections from counsel for Bustamante and from counsel for Belloli. It appears that counsel for Belloli expressly objected to three photographs in addition to those that counsel for Bustamante objected to. Those three photographs, however, are similar to the others. After reviewing this evidence, we believe that the unenlarged photographs equally graphically illustrated the injuries on the victim's body. The defendant raised no objection to the unenlarged photographs, except to one which displayed the autopsy incision.

   Belloli also asserted in his appeal that "the photographs did not depict the victim's injuries as they actually appeared but, in fact, distorted them by enlargement. This is

particularly true in light of the completely [*sic* ] failure of the State of Rhode Island to present any testimony as [to] the scale of the enlargement of these photographs." We reject this argument because two of the enlarged autopsy photographs contained a ruler next to the wound to indicate the size of the wounds, and others displayed sufficient area of the victim's body in the frame of the photograph to provide the context for the size of the wounds.

2. Later, after the jury instruction was given, defendant made a motion for a mistrial, based on the part of the instruction that concerned jurisdiction, claiming that the instruction was confusing. In his appeal, defendant did not argue the clarity of the instruction, and thus

The trial justice took the view that the state in which the "cause of death was administered," regardless of the location of the eventual death, acquires jurisdiction to prosecute the crime, and he therefore denied defendant's request and motion. While making his ruling on the motion to pass for lack of jurisdiction, the trial justice stated that:

> "[T]he only evidence before the Court is the stabbing occurred in Woonsocket, Rhode Island, and then Mr. Casserly was transported into the Commonwealth of Massachusetts, and the body was deposited in Massachusetts. * * * I find that the instrument and cause of death was the stabbing with the twenty-seven stab wounds found on the defendant which occurred in the State of Rhode Island."

The defendant also contended that the trial justice erred by declining to submit the issue of the territorial jurisdiction over the murder to the jury as a question of fact rather than proceeding as he did, by deciding himself the issue as a question of law. After the jury instruction and after addressing defendant's motion for a mistrial, the trial justice stated again that the question of jurisdiction is one of law for the court, in accordance with his interpretation of *State v. Halstead,* 414 A.2d 1138 (R.I.1980). We agree with this assessment and with the trial justice's statement that the principle enunciated in *Halstead* applies here, and for the reasons that follow, we conclude that defendant's position is without merit.

■ The determination of whether Rhode Island has territorial jurisdiction over a murder prosecution is a question of law for the judge, not the jury. Such a determination is reviewed *de novo* by this Court. *See Nonnenmacher v. City of Warwick,* 722 A.2d 1199, 1202 (R.I.1999) (the existence of a contract is a question of law reviewed *de novo* by the Court); *Levine v. Bess Eaton Donut Flour Co.,* 705

A.2d 980, 982 (R.I.1998) (statutory interpretation is a question of law that the Court reviews *de novo* ). With respect to defendant's motion to pass, we have consistently held that a decision on such a motion, "rests within the sound discretion of the trial justice. * * * This Court will not disturb such a ruling unless it is clearly wrong." *State v. Young,* 743 A.2d 1032, 1035 (R.I.2000).

■ In Rhode Island, the jurisdiction and venue of a murder prosecution in circumstances such as those alleged in this case, in which the victim may have died outside the state from wounds inflicted within the state, is governed by G.L.1956 § 12–3–6. Section 12–3–6, titled "Act within state resulting in death outside state," provides:

> "If a mortal wound is given, or if other violence or injury is inflicted, or if poison is administered within this state, as a result of which death ensues outside this state, the homicide shall be prosecuted and punished at the location of the superior court as the presiding justice may by order designate."

In interpreting this statute, we must "determine and effectuate the Legislature's intent and * * * attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Dias v. Cinquegrana,* 727 A.2d 198, 199–200 (R.I. 1999) (quoting *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987)). In enacting § 12–3–6, the Legislature clearly intended that Rhode Island assume jurisdiction over a murder prosecution when fatal injuries have been inflicted upon a victim in Rhode Island but the victim ultimately dies outside the state. This interpretation is consistent with the common-law view that prevails in the absence of a statute.

> "Thus murder (for instance, where the killing is accomplished by shooting or by mailing poisoned candy) is committed at the place where the fatal force impinges upon the body of the victim (the place

we do not rule on the propriety of the judge's ruling on the motion for a mistrial.

where the bullet strikes or the poison is consumed), rather than where the fatal force is initiated by the defendant's act (where he fires the bullet or mails the poison) or where the victim dies." 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 2.9 at 181 (1986).[3]

Hence, it is clear that the state is not required to prove that a victim died within Rhode Island in order that the Superior Court in this state assume jurisdiction in a murder prosecution. Consequently, the trial justice did not err by refusing to require that the state prove that the victim died in Rhode Island. Because § 12–3–6 explicitly makes the locus of the infliction of the violence or injury the determinative factor in assigning jurisdiction, we need not address the question of whether the state met its burden of proving that the death occurred in Rhode Island, given that such evidence is not required to prove an element of the crime, and hence no such burden has been imposed on the state.

The trial justice noted that uncontroverted evidence disclosed that the mortal wounds were inflicted in Rhode Island, and the defendant never contended that the wounds that proved fatal were inflicted outside the state. Because the unchallenged evidence revealed that those injuries were inflicted upon the victim in Rhode Island, under § 12–3–6, such evidence was sufficient to establish jurisdiction in this state. But in this case, the trial justice *also* correctly instructed the jury to find as a question of fact the state where the fatal wounds were inflicted, in order to establish this element of the crime, pursuant to § 12–3–6.[4] For these reasons, the defendant's allegations of error on this issue are without merit.

In summary, therefore, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court, to which we return the papers of the case.

BOURCIER, J., did not attend oral argument but participated on the basis of the briefs.

---

**3.** Citing, *e.g.*, *People v. Duffield*, 387 Mich. 300, 197 N.W.2d 25 (1972) (holding that Michigan had jurisdiction in a case in which a victim was beaten there but died in Indiana; also, containing an exhaustive overview of the authorities); *State v. Gessert*, 21 Minn. 369 (1875) (holding that Minnesota had jurisdiction when victim was stabbed in Minnesota, but died in Wisconsin). *See also* Rollin M. Perkins and Ronald N. Boyce, *Criminal Law*, Sec. 3 at 39 (3d ed. 1982) ("The territorial theory [of criminal jurisdiction] takes the position that criminal jurisdiction depends upon the place of perpetration. That is, a [state] has the power to determine what the law is with reference to happenings within its own territory.").

**4.** The trial justice instructed the jury as follows:

"Now, the state has alleged murder. By the way, where the person actually died, the State is not required to prove that to you beyond a reasonable doubt, but what they are required to prove, and I quote from a Rhode Island case in a homicide prosecution, 'The state must show that the person has died, and that death was caused by the criminal agency of another,' in other words, the acts of another person. To put it a little more—well, put it another way, if a person was standing on the state line between Rhode Island and Connecticut and a person came up and shot that person and the person fell over into Connecticut, the murder actually happened in Rhode Island, for the criminal activity happened in Rhode Island. That is what you can find, if you find that the stabbing happened in Rhode Island. But murder, the pertinent part of the statute pursuant to the charge of murder brought against the defendant provides that, one, murder, the unlawful killing of a human being with malice aforethought."