**Supreme Court**

No. 2011-394-C.A.

(P1/10-3259BG)

State                          :

v.                           :

Yoneiry Delarosa.                 :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                               :

Yoneiry Delarosa.                   :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The defendant, Yoneiry Delarosa, appeals from a Superior Court judgment of conviction.  Specifically, the defendant argues that the trial justice erred by admitting into evidence photographs of his tattoos, which photographs also depicted his face "in a 'scruffy' and disheveled condition."  As such, the defendant contends that the unredacted photographs showing his face should not have been admitted because portraying his face in the pictures was not relevant and was unduly prejudicial.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### I

### Facts and Procedural History

On July 27, 2010, sometime after 5:30 p.m., three people entered the apartment of Jose Silva and Wandalyz Maldonado in the Federal Hill area of the City of Providence.  Their friends Jason Weeks and Angelina Breault also were visiting with their son at that time.  At trial, Silva testified that while sitting in the parlor, he heard the kitchen door open and went to see who it was.  When he entered the kitchen, he saw a "man with a mask on his face and a gun,"[1] who was

---

[1] Silva testified that the mask was a white hockey mask similar to the one worn by the character Jason in the movie Friday the 13th.

- 1 -

wearing a white "wife-beater"[2] and shorts, as well as two other men whose faces also were covered.

Silva testified that the masked man with the gun backed him into the parlor and asked him three times, in a "very high-pitched" tone, "Where's the money?"—to which Silva replied that he did not have any money. Further, Silva testified that the man then hit him three times in the back of his head with the gun. After the third blow, the gunman "fired a shot" that left a "hole in the floor two inches away from * * * the bouncer chair where [Silva's infant daughter] was sitting." He also lunged at the child, but instead, grabbed the television and ran out the door. Silva and Weeks ran after the men, and Silva testified that he saw his television, a red shirt, and a red hat lying in a driveway around the corner from his house.

The gunman's face could not be identified because of the mask; and, therefore, an issue in the trial was the use of the gunman's tattoos as a means of identification. Maldonado testified that the gunman was Hispanic, with black-ink letters tattooed on each of his arms, but she also clarified that she did not recall his tattoo being a "sleeve."[3] During cross-examination she admitted that, at an earlier proceeding, she had testified that the gunman's tattoo "was like rims of clouds"; and she also admitted that, when the police had originally shown her pictures of various tattoos, she had pointed to a photograph of a tattoo pattern that she thought could have been the shooter's. The picture that Maldonado selected, however, was not of defendant's tattoos. Maldonado also testified at the trial that she could not remember the tattoos and stated that she did not know whether defendant actually played a role in the invasion of her home.

---

[2] A "wife-beater" was described as a slang word for "a sleeveless tank top style T-shirt."
[3] Maldonado defined a "sleeve" as referring to a person's whole arm being covered in tattoos.

Similarly, Breault testified that the gunman had "a couple tattoos," one that was "writing [or] lettering" on his right arm and another on his shoulder.[4] She stated that, a few weeks after the crime, she was shown the photograph that Maldonado had identified as possibly depicting the gunman's tattoo, but did not recognize it as the tattoo on the arm of the gunman. However, when shown a photograph of defendant's right arm, she positively identified it as being that of the gunman. According to Breault, while the gunman and Silva were wrestling, the gunman's shirt was pulled up, revealing a "weird" tattoo on his chest that "look[ed] like a circle or like [an] oval shape" and seemed like it was "homemade."

Christina Bartley also testified at trial.[5] She stated that on July 27, 2010, her boyfriend, Devon Letourneau, picked her up from work when her shift ended at approximately 4:30 p.m. Letourneau was with defendant and Joshua Ortiz, two people that Bartley said she did not know at that time. After leaving her workplace, she drove while Letourneau sat in the front passenger seat and defendant and Ortiz sat in the back seat. According to Bartley, they were merely driving around when defendant took a phone call. After he ended the call, defendant "started talking about committing a robbery" and said, "[w]e should run up in home boy's crib."[6] Ortiz similarly testified that a conversation about robbing Silva and Maldonado for marijuana and money had taken place.

Bartley testified that she pulled over to the side of the road, and that defendant and Letourneau then got out of the car, went to the trunk, and "got back in the car with a gun and [a]

---

[4] Breault testified that she did not know whether the gunman had a tattoo on his left arm because she did not get a chance to see his left arm.

[5] After her arrest, Bartley entered into a cooperation agreement with the state, in which she agreed to testify about the events that occurred on July 27, 2010, in exchange for a reduced sentence.

[6] Bartley explained that she understood the phrase, "run up in home boy's crib" to mean that defendant was "going to rob somebody."

Jason mask." She specified that Letourneau originally held the gun and that defendant held the mask, but that Letourneau handed the gun to defendant after they got back in the car. Bartley stated that she drove to Almy Street and parked. The three men got out of the car, and then she left the area.[7] Ortiz testified that during the robbery he remained near the stairs in Silva's apartment building and could not see what was going on inside the apartment; however, he stated that he did hear defendant demand money and Letourneau say, "Hit him. Hit him." Ortiz stated that there was a lot of screaming, and then defendant fired the gun, causing everyone to run out of the house.

The defendant was indicted by a grand jury on October 28, 2010, on five counts:[8] (1) robbery in the first degree, (2) conspiracy to commit robbery, (3) breaking and entering a dwelling without consent while the owner was on the premises, (4) carrying a firearm without a license, and (5) using a firearm during the commission of a crime of violence.

A jury trial commenced on July 25, 2011, during which Paul Ledoux, a correctional officer at the Adult Correctional Institutions (ACI), testified that after defendant had been taken for DNA testing on January 25, 2011, he was "[h]oller[ing] back and forth to another inmate basically stating, 'How do they know it was me? Everybody was wearing a mask.'"

Cara Lupino, the supervisor and technical leader of the DNA laboratory at the Rhode Island Department of Health Forensic Biology Laboratory, also testified that the laboratory received various clothing and personal accessories, as well as DNA profiles from Ortiz, Letourneau, and defendant. According to Lupino, after the red T-shirt was tested, it was

---

[7] Ortiz testified that when they got out of the car, Letourneau had both the mask and the gun in his hands, but when they arrived upstairs to Silva's apartment, Letourneau had neither item.

[8] The indictment charged defendant, Letourneau, and Ortiz each with five counts, each count alleging a different crime; however, Letourneau's case subsequently was severed from defendant's, and Ortiz entered into a plea agreement with the state in exchange for information and his testimony.

concluded that defendant was "a possible contributor to th[e] DNA type" found on the collar of the shirt. The defendant testified in his own defense, denying any involvement in the robbery.

On July 29, 2010, the jury found defendant guilty of all five counts. The defendant filed a motion for a new trial on August 16, 2011, which the trial justice denied after a hearing. Sentencing took place on September 28, 2011, at which time the trial justice imposed a sentence of thirty years to serve on count 1; a consecutive ten-year term, without parole, on count 5; and on counts 2, 3, and 4, three consecutive ten-year terms to serve, suspended, with probation to start after the completion of the jail term on counts 1 and 5.

## II

### Standard of Review

The sole issue raised by defendant on appeal concerns the admission into evidence of the unredacted photographs depicting defendant's face as well as his tattoos. "The admission of photographic evidence lies within the sound discretion of the trial justice." State v. Hallenbeck, 878 A.2d 992, 1013 (R.I. 2005). When challenged as unduly prejudicial, "[t]he test is whether the photograph is of such a nature as to inflame the jurors and therefore prejudice them beyond the ordinary prejudice that is always sustained by the introduction of relevant evidence intended to prove guilt." Id. at 1019 (quoting State v. Belloli, 766 A.2d 928, 930 (R.I. 2001)). "As with the admission of evidence generally, determining the relevance of photographs is within the sound discretion of the trial justice." Belloli, 766 A.2d at 930 (quoting State v. Spratt, 742 A.2d 1194, 1198 (R.I. 1999)). "Moreover, '[a] photograph is relevant if it has a tendency to prove or disprove some material fact in issue.'" Id. (quoting Spratt, 742 A.2d at 1198).

- 5 -

"When considering a challenge to the admission of photographs under Rule 403 [of the Rhode Island Rules of Evidence],[9] '[o]ur function is to review the record and to determine whether the trial justice carefully considered whether the probative value of the evidence was outweighed by undue prejudice, keeping in mind that even if the evidence offered * * * might tend to influence the jury unduly, it may nevertheless be admissible if it is otherwise material and competent.'" Belloli, 766 A.2d at 930 (quoting Spratt, 742 A.2d at 1198).

### III

### Discussion

On appeal, defendant argues that the trial justice erred by admitting into evidence photographs that not only portrayed his tattoos, but his face as well. He contends that the admission of these pictures was unnecessary, not relevant, and unduly prejudicial because they were taken at the ACI and showed his face at a time when he was "in a 'scruffy' and disheveled condition." Further, defendant asserts that, "more importantly, the inclusion of his face in the photographs might well have influenced the witnesses' identifications of the tattoos, since the witnesses were then able to compare the face in the photographs with defendant's face as he was seated at counsel table during the course of the trial."

The state counters that

> "allowing the [s]tate's witnesses to view defendant's face in the photographs was especially important since the three intruders covered their faces during the course of the crime * * * and the witnesses' ability to view defendant's face at trial allowed jurors to make the connection between the tattoos and defendant while also enabling the witnesses to check the proportion of his head to his body."

---

[9] Rule 403 of the Rules of Evidence states that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The state contends that "the trial justice acted well within his discretion when he concluded that defendant did not 'look[] as scruffy' in the photographs as defense counsel alleged," but instead "look[ed] pretty much like he does today other than some facial hair along his chin."

The defendant asserts that "[t]he practice of redacting photographs of defendants before their submission to a jury, to sanitize them of irrelevant or unduly prejudicial content, is hardly unusual." He further states that courts have "routinely require[d] 'mug shot' or 'rogue's gallery' [sic] photographs to be redacted so as to remove information contained therein that discloses a defendant's past police history." The defendant urges this Court to analyze the admission of his photographs under the test we applied to mug shots and articulated in State v. Lemon, 456 A.2d 261, 265 (R.I. 1983) ("(1) the prosecution must have a demonstrable need to introduce the photographs; (2) the photographs themselves, if shown to the jury, must not imply that the defendant had a prior criminal record; and (3) the manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs").

After reviewing the photographs at issue, we are satisfied that the trial justice did not abuse his discretion. It is clear to this Court that these are not typical "mug shot" photographs of defendant. Although they were taken at the ACI, the photographs contain no obvious indicia that defendant was incarcerated at the time. The defendant is not wearing a prison badge, the photographs were not taken against a background of horizontal lines marking his height, and there is not a nameplate in the photograph. Accordingly, the Lemon test is not applicable to the photographs under review.

Furthermore, we note that the trial justice addressed the defendant's objection as well as practical concerns with redacting the photographs. The trial justice stated:

> "I don't think that there's any prejudice in showing the defendant's face in these photographs. I don't think he looks scruffy as you claim. He has some moderate facial hair, but, other than that, he looks pretty much like he does today, other than some facial hair along his chin. Many of the Letourneau photographs don't have Mr. Letourneau's face in them, and, in order that the photographs not be mixed up as to which tattoos belong to which person, I think it's important that the jury recognize that the tattoos that adorn the arm and chest of this defendant in fact include his face so there's no confusion."

We perceive no abuse of discretion in either the trial justice's determination that the pictures showing the defendant's face were relevant or in admitting the photographs into evidence. Rather, he appropriately weighed the probative value of the photographs against the probability of undue prejudice, finding that the defendant looked "pretty much" the same in the photographs as he did in the courtroom.

## IV

### Conclusion

For the reasons set forth in this opinion, we are satisfied that the trial justice did not err in admitting the unredacted photographs of the defendant's tattoos. Accordingly, we affirm the judgment of the Superior Court and remand the papers in this case to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        State v. Yoneiry Delarosa.

**CASE NO:**        No. 2011-394-C.A.
                              (P1/10-3259BG)

**COURT:**        Supreme Court

**DATE OPINION FILED:**        February 19, 2013

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**        Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**        Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                              Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

                              For State:  Lauren S. Zurier
                                          Department of Attorney General

                              For Defendant:  Janice M. Weisfeld
                                                Office of the Public Defender