# In the Iowa Supreme Court

No. 24–0170

Submitted February 18, 2026—Filed April 17, 2026

**State of Iowa,**

Appellee,

vs.

**Dillon Michael Heiller,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Allamakee County, John Bauercamper, senior judge.

The defendant appeals his conviction for theft by taking of a vehicle that was reported stolen in Wisconsin, arguing that the State of Iowa lacked criminal jurisdiction to prosecute him for the offense. **Decision of Court of Appeals Vacated; District Court Conviction and Sentence Vacated and Case Remanded.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Shea M. Chapin (argued) of The Chapin Center, PLC, Dubuque, for appellant.

Brenna Bird, Attorney General, and Martha E. Trout (argued), Assistant Attorney General, for appellee.

Jacob A. Sarasin, Thomas D. Story, Shefali Aurora, and Rita Bettis Austen of ACLU of Iowa Foundation Inc., Des Moines, for amicus curiae American Civil Liberties Union of Iowa.

**McDonald, Justice.**

This case involves a challenge to the State of Iowa's attempted exercise of its criminal jurisdiction. A vehicle was reported stolen in La Crosse, Wisconsin. The next day, only a short distance away in Waukon, Iowa, police officers found Dillon Heiller in possession of that same vehicle and placed him under arrest. Heiller was charged with and convicted of theft under a theory of theft by taking. Heiller did not challenge the State's assertion of criminal jurisdiction in the district court, but he challenges it for the first time on appeal. Iowa's criminal jurisdiction statute, Iowa Code section 803.1 (2023), provides that a person is "subject to prosecution in this state" only under certain conditions. Satisfaction of those conditions is a necessary, nonwaivable prerequisite to any criminal prosecution, and a party can raise a challenge to the State's criminal jurisdiction at any time during the pendency of the case, even on appeal. On the merits, we conclude that the statutory conditions necessary to invoke the State's power to prosecute Heiller for this offense were not satisfied and that his conviction must be vacated.

I.

At approximately 7:30 in the morning on October 1, 2023, Heiller parked an orange 2018 Volkswagen Tiguan SUV bearing Wisconsin license plates in front of a house in Waukon, Iowa. One of the homeowners was on her porch having a cup of coffee. She did not recognize Heiller or the vehicle. She went inside the house and watched Heiller from the mudroom. Heiller exited the vehicle and went back and forth from the trunk to the front seat. Then he went into the backseat of the vehicle and closed the doors. The homeowner thought that was odd, and she called her husband to come and watch. Heiller got out of the vehicle, opened the trunk, and placed items into a backpack. He put up the

hood on his orange sweatshirt and put on sunglasses. Then he walked a block or so away carrying the backpack and a four-pack of wine coolers. The woman thought "it was really weird" that Heiller would park one block away from the person he was visiting, and she called the Waukon Police Department. She gave the police department the license plate information. The police department ran the plate, told the woman that the car was reported stolen, and told her that they would be there in a minute.

Officer Brent Parker received the call from the homeowner. After running the license plate check, Parker went to the house to investigate. He saw the Tiguan parked in front of the caller's house. He learned from the caller the direction Heiller went, and he proceeded in that direction. Parker decided to start at a house known by the police for its frequent calls. When Parker arrived at the house, he observed Heiller in the backyard. Parker attempted to speak with Heiller, but Heiller sprinted away. After several minutes, other peace officers who had responded to the scene found Heiller in an open garage a few blocks away. Heiller refused to cooperate with the officers. Parker then arrived at the scene and deployed his taser in an attempt to subdue Heiller. Parker missed Heiller, but after seeing the use of the taser, Heiller gave up and was placed under arrest. The officers recovered a Volkswagen key on the floor of the garage less than ten feet from where they found Heiller.

The State charged Heiller with theft in the first degree under the theory of theft by taking, in violation of Iowa Code sections 714.1(1) and 714.2(1). Theft committed by means of exercising possession of stolen property is a separate offense, a violation of Iowa Code section 714.1(4), which was not charged in this case. There was a disconnect between the charged offense and the prosecutor's theory of the case as presented at trial. Although the State charged Heiller with

theft by taking, the prosecutor told the jury in his opening statement that the State was going to prove Heiller exercised possession of stolen property:

> We're going to look at whether or not this car was stolen property, whether or not Mr. Heiller was in possession of it, whether or not that occurred here in Allamakee County, and whether or not this vehicle in question had a value of $10,000 or more. Those -- those are the issues that I'm going to ask you to be thinking about and listening to when these witnesses testify.

The State's case-in-chief was brief. The State called the homeowners and the law enforcement officials involved in investigating the case and arresting Heiller. The owner of the vehicle did not testify at trial, but Officer Parker testified, without objection, to information he learned from the stolen vehicle report and from several interactions he had with the owner. The owner of the vehicle was Matt Alioto. Alioto was arrested in La Crosse on September 26, 2023 (the basis for the arrest was not specified). On September 28, Alioto's son drove by Alioto's residence and saw the Tiguan parked there. On September 30, Alioto's son drove by Alioto's residence again and saw the Tiguan was missing. Alioto's son told Alioto, who was still in jail, about the missing vehicle. On September 30, Alioto reported the vehicle stolen to the La Crosse Police Department. Alioto was released from jail in mid-October, after Heiller had been arrested and the Tiguan had been impounded. After being released, Alioto immediately went to recover the vehicle. When Alioto recovered the vehicle from the Waukon Police Department, he presented valid registration, proof of insurance, and identification. At that time, Officer Parker presented Alioto with a picture of Heiller. Alioto told Parker that he did not know Heiller, had never heard his name, and did not sell him the car.

After the State rested, the defendant moved for judgment of acquittal. The defendant first argued that the State "failed to put forth the primary witness

against [Heiller], the person who reported the car stolen, Matthew Alioto." He made an argument that the State had the burden of calling the primary witness in the case. Second, the defendant argued that the charge must be reduced from theft in the first degree to theft in the second degree because the State failed to present any evidence to prove the car was valued at more than $10,000, which is the statutory threshold between the two offenses. The defendant made no challenge to the State's jurisdiction to prosecute the offense.

The prosecutor resisted the motion for judgment of acquittal. But he first responded by clarifying his theory of the case. He stated, "First, I'd like to make the distinction that the crime being alleged here is not the actual stealing of the car in Wisconsin. The crime alleged is that Mr. Heiller is in possession of stolen property."

The district court denied in part and granted in part the defendant's motion. The district court found "that there ha[d] been a sufficient factual record on the issue of whether or not the vehicle was stolen, that the defendant had possession of stolen property" and determined that "to that extent, the motion for judgment of acquittal [was] denied." The district court concluded that the State failed to prove the value of the vehicle exceeded $10,000, and it granted the defendant's motion to dismiss the charge of theft in the first degree.

Heiller testified in his own defense. He claimed that he purchased the Tiguan from an individual named Mason Beattie for $3,500 and that he also traded his boat for the vehicle. He testified that the transaction occurred at a bar in Brownsville on September 30. He stated that he paid extra so that Beattie would leave the Wisconsin plates on the Tiguan. Heiller believed the title to the car was in the glove box, but he did not check to make sure. He acknowledged

being "pretty loaded" when the transaction occurred. He claimed that he was in rightful possession of the vehicle.

The district court provided proposed jury instructions to the lawyers, and neither made any objections to the instructions. The district court instructed the jury based on the charged offense, theft by taking in violation of section 714.1(1). The instruction did not contain a jurisdictional element requiring the jury to find that the offense was committed wholly or partly within the State of Iowa. The district court also instructed the jury on Heiller's claim-of-right defense.

Although the district court instructed the jury on a theory of theft by taking, the prosecutor continued to argue to the jury that this case was a case involving the possession of stolen property. He said during closing argument:

> I think this is really going to come down to weighing that credibility issue and deciding whether or not you think Mr. Heiller was knowingly in possession of this vehicle knowing it was stolen. I don't think there was any question that he was in possession of it. I don't think there's any question that it occurred here in Allamakee County.

Despite the divergence between the charged offense and instruction and the prosecutor's presentation of the case to the jury, the jury found Heiller guilty of theft in the second degree. The district court sentenced Heiller to an indeterminate term of incarceration not to exceed five years.

Heiller appealed his conviction, and we transferred the case to the court of appeals. On appeal, Heiller argued that the State failed to prove territorial jurisdiction to prosecute him for this offense. The court of appeals had already rejected that same argument in a companion case also involving Heiller. *See State v. Heiller*, No. 24–0169, 2025 WL 4656490 (Iowa Ct. App. Sept. 4, 2025) (en banc). In the companion case, the court of appeals acknowledged that "[c]hallenges to territorial jurisdiction, which go to the power of the court to hear

the case, cannot be waived." *Id.* at \*2 (quoting *State v. Rimmer*, 877 N.W.2d 652, 663 (Iowa 2016)). Nonetheless, in the companion case, the court of appeals concluded that Heiller failed to preserve error on the issue because he failed to request a jurisdictional element in the jury instruction. *Id.* at \*3. Because Heiller had not preserved error on the issue, he could not raise it for the first time on appeal. *Id.* One judge dissented in part. *Id.* at \*6 (Tabor, C.J., concurring in part and dissenting in part) ("When the Iowa Supreme Court says that challenges to territorial jurisdiction cannot be waived, I take the justices at their word."). The court of appeals applied its prior decision in the companion case to this case and concluded, en banc, that error was not preserved here and that the issue could not be raised on appeal without prior objection. One judge again dissented. This court has since vacated the court of appeals decision in the companion case. *See State v. Heiller*, ___ N.W.3d at ___, 2026 WL 784065, at \*7 (Iowa Mar. 20, 2026).

In addition to his territorial jurisdiction challenge, Heiller also contested the sufficiency of the evidence showing his intent to deprive the owner of the vehicle and the sufficiency of the evidence regarding his claim-of-right defense. The court of appeals concluded that Heiller forfeited the claim regarding the sufficiency of the evidence showing the intent to deprive because he made no substantive argument as to how the evidence was insufficient. The court of appeals rejected Heiller's argument that he established a claim-of-right defense. As the court of appeals explained, there was substantial evidence supporting the conclusion that Heiller stole the vehicle, and the jury was free to reject Heiller's testimony that he purchased the vehicle from Beattie in a bar in Brownsville.

We granted Heiller's application for further review. This court has the discretion to discuss only selected issues when granting further review. *See State v. Warburton*, 31 N.W.3d 29, 33 (Iowa 2026). We exercise that discretion

here in two respects. First, we limit our discussion to the question of whether Heiller was subject to prosecution for this offense within the meaning of Iowa Code section 803.1. On that issue, our review is for the correction of errors at law. *See Rimmer*, 877 N.W.2d at 660–61. Second, although we do not discuss it further, we summarily reject Heiller's challenge to the sufficiency of the evidence establishing he committed theft by taking. The conviction is supported by substantial evidence when the evidence is viewed in the light most favorable to the State.

## II.

Criminal jurisdiction refers to a sovereign's power to create and enforce its criminal law. *Rimmer*, 877 N.W.2d at 661. As a matter of political theory, a sovereign has virtually unlimited power to make criminal law and enforce its criminal law against persons for conduct occurring inside or outside its territorial boundaries. This power unlimited in theory is limited in fact. It is limited by a sovereign's reluctance to expend its resources to prosecute persons for conduct occurring outside its territorial boundaries. It is limited by the practical difficulty of a sovereign obtaining physical custody over persons in another jurisdiction. It is limited by the *realpolitik* of one sovereign asserting the power to apply its criminal law to persons and conduct subject to the criminal jurisdiction of another sovereign. And, with respect to sovereign states in our constitutional republic, it is limited by the federal and state constitutions. *See id.* at 665–66 (stating that the extraterritorial application of criminal law is limited by the Fourteenth Amendment and collecting cases); *State v. Liggins*, 524 N.W.2d 181, 184 (Iowa 1994) (noting that the territorial principle is "preserved to some degree by the United States and Iowa Constitutions"); Matthew P. Cavedon, *Federalism Limits on State Criminal Extraterritoriality*, 57 Ariz. St. L.J. 811, 832 (2025)

[hereinafter Cavedon, *Federalism Limits*] (discussing federalism limits on state criminal jurisdiction).

Whatever the limits of their potential power, states in our constitutional republic have traditionally adhered to the territorial principle in the exercise of that power. The territorial principle holds that crimes are typically cognizable and punishable only within the territorial jurisdiction where they were committed. *See Liggins*, 524 N.W.2d at 184 ("Traditionally, at least under the common law, jurisdiction to subject an accused to criminal prosecution rests in the courts of the state in which the crime was committed."); Wendell Berge, *Criminal Jurisdiction and the Territorial Principle*, 30 Mich. L. Rev. 238, 239–41 (1931). The territorial principle was widely accepted at the time of America's founding. It is evidenced in the Federal Constitution. The Venue Clause of Article III requires that federal criminal trials be held in the state where the crime was committed. U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment requires juries drawn from the state and district where the crime occurred. U.S. Const. amend. VI. State courts embraced the territorial principle nearly universally from the earliest years of the Republic. *See* Cavedon, *Federalism Limits*, 57 Ariz. St. L.J. at 822.

In more recent times, states have asserted greater power to enforce their respective criminal laws. In *Strassheim v. Daily*, 221 U.S. 280, 285 (1911), Justice Holmes concluded that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, [can] justify a State in punishing the cause of the harm." In 1962, the Model Penal Code incorporated a more expansive interpretation of criminal jurisdiction extending beyond the strict territorial principle. *See* Model Penal Code § 1.03, cmt. 1, at 35–37 (A.L.I. 1962). Since then, "[a] substantial majority of the states today have statutes that

adopt an interpretation of the territorial principle substantially more expansive than the traditional common law position." 4 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 16.4(c), at 579 (2nd ed. 1999) [hereinafter LaFave, *Criminal Procedure*]; *see Liggins*, 524 N.W.2d at 184 ("The territorial principle of jurisdiction has been enlarged in a number of states by statute."). Thus, "[a]lthough the constitutional limits of state courts' extraterritorial jurisdiction in criminal matters have not been precisely delineated, it is clear that states may extend their jurisdiction beyond the narrow limits imposed by the common law." *People v. Betts*, 103 P.3d 883, 887 (Cal. 2005).

### III.

We take this case as an opportunity to clarify Iowa law regarding criminal jurisdiction. Like the majority of other states, the State of Iowa has asserted a more expansive power to enforce its criminal law. *See Liggins*, 524 N.W.2d at 184; *State v. Hustead*, 538 N.W.2d 867, 871 (Iowa Ct. App. 1995). Iowa Code section 803.1 is entitled "State criminal jurisdiction." In this criminal jurisdiction statute, Iowa has asserted the power to enforce its criminal law against persons for conduct occurring wholly within this state, partly within this state, and, in some circumstances, wholly outside the state:

> 1. A person is subject to prosecution in this state for an offense which the person commits within or outside this state, by the person's own conduct or that of another for which the person is legally accountable, if:
>
> *a.* The offense is committed either wholly or partly within this state.
>
> *b.* Conduct of the person outside the state constitutes an attempt to commit an offense within this state.
>
> *c.* Conduct of the person outside the state constitutes a conspiracy to commit an offense within this state.

*d.* The offense is based upon a statute that specifically prohibits conduct wholly outside of the state, and the conduct bears a reasonable relation to a legitimate state interest, and the person knows or should know that the conduct is likely to affect that interest.

*e.* Conduct of the person within this state constitutes an attempt, solicitation, or conspiracy to commit an offense in another jurisdiction, which conduct is punishable under the laws of both this state and such other jurisdiction.

*f.* The offense is committed by a member of the state military forces against another member of the state military forces, both are in a duty status at the time of the offense, whether inside or outside the state, and the offense is one for which civil courts have jurisdiction under section 29B.116A. However, for those offenses subject to both civilian and military jurisdiction, civilian jurisdiction shall not be declined solely on that basis.

2. An offense may be committed partly within this state if conduct which is an element of the offense, or a result which constitutes an element of the offense, occurs within this state. If the body of a murder victim is found within the state, the death is presumed to have occurred within the state. If a kidnapping victim, or the body of a kidnapping victim, is found within the state, the confinement or removal of the victim from one place to another is presumed to have occurred within the state.

3. An offense which is based on an omission to perform a duty imposed upon a person by the law of this state is committed within the state, regardless of the location of the person at the time of the omission.

Iowa Code § 803.1.[1]

This court has interpreted and applied section 803.1 on several occasions. In those decisions, we have stated that the state's assertion of criminal

---

[1]Because the statute uses the term "criminal jurisdiction," we use that term in lieu of the term "territorial jurisdiction." *See State v. Serrato*, 787 N.W.2d 462, 468 (Iowa 2010) (referring to this as the "criminal jurisdiction statute"); *State v. Wagner*, 596 N.W.2d 83, 85 (Iowa 1999) (en banc) (explaining that "criminal jurisdiction" or "territorial jurisdiction" "refers to the power of the State of Iowa 'to create criminal law'" and to establish the "permissible geographical scope of penal legislation" (quoting 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 16.2(a), at 342 (1984))).

jurisdiction to prosecute an offense is an "essential element of the crime" to be submitted to the jury and proved beyond a reasonable doubt. *Liggins*, 524 N.W.2d at 184; *see Rimmer*, 877 N.W.2d at 661 ("[S]tate territorial jurisdiction is an essential element of the crime . . . [that t]he State is required to prove . . . beyond a reasonable doubt." (alterations and omissions in original) (quoting *Liggins*, 524 N.W.2d at 184–85)); *Serrato*, 787 N.W.2d 462, 468 (Iowa 2010) (stating that "jurisdiction to prosecute a criminal offense . . . is an essential element of every crime, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution requires the State to prove it beyond a reasonable doubt"); *State v. Wagner*, 596 N.W.2d 83, 85 (Iowa 1999) (en banc) ("Because the State's 'territorial jurisdiction is an essential element of the crime,' the State bears the burden to establish jurisdiction." (quoting *Liggins*, 524 N.W.2d at 184)).

Our prior statements that criminal jurisdiction is an "essential element" of the offense were incorrect and have engendered doctrinal confusion. For example, in this case, Heiller's jurisdictional challenge is raised as a challenge to the sufficiency of the evidence supporting his conviction. Given our precedents, the defendant's framing of the issue is understandable, but it is ultimately wrong. "Elements 'are those "constituent parts of a crime . . . that the prosecution must prove to sustain a conviction." ' " *State v. Cooley*, 21 N.W.3d 137, 142 (Iowa 2025) (omission in original) (quoting *State v. Bailey*, 2 N.W.3d 429, 434 (Iowa 2024)). "To determine the elements of an offense, we look to the statute that defines the crime." *Id.* There is nothing in the Iowa Criminal Code that supports the proposition that criminal jurisdiction is an element of any offense, generally, or this theft offense, specifically.

In addition to not being supported by the Code, the conclusion that criminal jurisdiction is an element of the offense to be proved beyond a reasonable doubt to a jury is inconsistent with the practice in Iowa's courts. Based on our experience, district courts rarely, if ever, instruct the jury that criminal jurisdiction is an element of the offense. *State v. Liggins* attempted to square that circle by explaining that a jurisdictional instruction was necessary only where jurisdiction was disputed. 524 N.W.2d at 184–85. On further consideration, we conclude that is also incorrect. "[B]efore [the State] can secure a conviction the State must demonstrate to the jury beyond a reasonable doubt each essential element of the alleged offense. Any lesser standard would deny due process." *State v. Lewis*, 242 N.W.2d 711, 719 (Iowa 1976) (en banc); *see Alleyne v. United States*, 570 U.S. 99, 104 (2013) (stating that the Sixth Amendment and the Due Process Clause "requires that each element of a crime be proved to the jury beyond a reasonable doubt."); *Harris v. United States*, 536 U.S. 545, 557 (2002) (stating that the government has a "constitutional obligation[] to charge each element in the indictment, submit each element to the jury, and prove each element beyond a reasonable doubt"), *overruled on other grounds by*, *Alleyne*, 570 U.S. 99. Thus, if criminal jurisdiction were an essential element of an offense, it would have to be instructed to the jury in every case without regard to whether it was contested or not.

Further cutting against the conclusion that criminal jurisdiction is an element of the offense are the rules of criminal procedure. The rules of criminal procedure specifically contemplate that the determination of criminal jurisdiction is a question of law for the court and not a question of fact for the jury. *See* Iowa R. Crim. P. 2.19(5)(*b*) ("If the court determines it lacks territorial jurisdiction of the offense, the court shall . . . ."). For example, in *State v.*

*Rimmer*, this court reviewed the trial information and the minutes of testimony to determine whether the state had established criminal jurisdiction to proceed. 877 N.W.2d at 670–76. After reviewing the trial information and minutes, this court concluded that the state had established criminal jurisdiction and remanded the case "to allow the prosecution on Counts 1, 2, 3, and 5 to proceed." *Id.* at 676.

The rules of criminal procedure regarding the disposition of a charge are also inconsistent with the idea that criminal jurisdiction is an element of the offense to be proved to a jury. The failure of proof on an essential element of the crime requires the entry of judgment of acquittal, *see* Iowa R. Crim. P. 2.23(1)(*a*) (requiring entry of judgment of acquittal), with attendant double jeopardy protections, *see Evans v. Michigan*, 568 U.S. 313, 318–20 (2013); *State v. Karpov*, 458 P.3d 1182, 1185–86 (Wash. 2020) (en banc). However, the rules of criminal procedure do not treat criminal jurisdiction as an element requiring entry of judgment of acquittal where it is lacking. Instead, the rules provide that "the court shall dismiss the indictment." Iowa R. Crim. P. 2.19(5)(*b*). In addition, if criminal jurisdiction were an element of the offense, then the judgment of acquittal would entitle a defendant to "be discharged as soon as the judgment is given." *Id.* r. 2.22(7). However, the rules of criminal procedure provide that where the court determines it lacks jurisdiction, it can "order the defendant's retention in custody for a reasonable time to allow the prosecuting attorney to inform the relevant authorities in the appropriate jurisdiction and to permit that jurisdiction to take custody of the defendant." *Id.* r. 2.19(5)(*b*).

In addition to the practice in our courts, the constitutional considerations, and the rules of criminal procedure, the better-reasoned persuasive authorities hold that criminal jurisdiction is a question of law for the court. *See Mitchell v.*

*United States*, 569 A.2d 177, 180 (D.C. 1990) (holding that "the jurisdictional question" was for the court); *State v. Jackson*, 118 P.3d 1238, 1251 (Kan. 2005) ("Jurisdiction is a question of law to be decided by the court, not the jury."); *McNamara v. State*, 377 P.3d 106, 112 (Nev. 2016) ("Our prior decisions make [clear] that territorial jurisdiction is a question of law reserved for the court."); *State v. Reldan*, 449 A.2d 1317, 1324 (N.J. Super. Ct. App. Div. 1982) ("The evidence presented below and the inferences reasonably to be drawn therefrom presented sufficient ground to confer jurisdiction to the State of New Jersey. The question of jurisdiction is not one for the jury. The decision rendered by the trial judge . . . is therefore affirmed." (citation omitted)); *State v. Aguilar*, 736 P.2d 620, 621 (Or. Ct. App. 1987) (per curiam) ("[T]he determination of jurisdiction is a matter of law for the court to decide . . . ."); *State v. Belloli*, 766 A.2d 928, 932 (R.I. 2001) ("The determination of whether Rhode Island has territorial jurisdiction over a murder prosecution is a question of law for the judge, not the jury."); *State v. Holm*, 137 P.3d 726, 749–50 (Utah 2006) ("The jurisdiction determination is a matter for the trial court, not the jury, and the court itself must resolve any associated factual disputes by a preponderance of the evidence."); *Karpov*, 458 P.3d at 1186 ("Karpov argues that jurisdiction is an 'essential element' of every criminal case, which must be proved beyond a reasonable doubt. Karpov is wrong for several reasons.").

The Connecticut Supreme Court reached the same conclusion in *State v. Beverly*, 618 A.2d 1335 (Conn. 1993). It explained that "the elements of a crime are spelled out in the statute defining the crime." *Id.* at 1338. The court explained that jurisdiction was not an element of the offense and instead was an issue "to be decided by the court." *Id.* That conclusion was consistent with the general principle that issues regarding the power of a court to proceed are issues for the

court. *See id.* Importantly, as in *Rimmer*, reserving this procedural issue for the court presented no constitutional problem because "[a] defendant's constitutional right to a jury does not extend beyond the factual issues that are relevant to the ultimate question of guilt or innocence under the relevant statute." *Id.*; *see also Betts*, 103 P.3d at 892 ("Because territorial jurisdiction is a procedural matter that relates to the authority of California courts to adjudicate the case and not to the guilt of the accused or the limit of authorized punishment, a jury trial on the factual questions that establish jurisdiction is not required by the federal Constitution.").

Among the persuasive authorities, the most thorough treatment of the issue is the *People v. Betts* decision from the California Supreme Court. 103 P.3d at 888. That court explained that while "territorial jurisdiction frequently involves questions of fact, . . . it is a procedural issue that does not determine the guilt or innocence of the accused." *Id.* Therefore, "the trial court, rather than a jury, should decide the issue of territorial jurisdiction." *Id.* "The jurisdictional nature" of the issue made it less "suitable for jury determination . . . because jurisdiction is not related to guilt or innocence." *Id.* The fact that some factual issues might need to be resolved by the court to decide the jurisdiction question does not make the issue a factual element for the jury. *See id.* at 889. "Trial courts routinely decide issues that determine whether the case before them can be prosecuted, even when those issues present factual as well as legal questions." *Id.* The *Betts* court acknowledged that state courts are divided on the issue. *See id.* at 890 nn.4, 5 (collecting cases). However, the courts holding that jurisdiction is an element of the offense "have provided little analysis." *Id.* at 890. We agree with that assessment. The *Betts* court also explained that treating criminal jurisdiction as an issue of law for the court benefits the defendant, who

can move to dismiss the charges prior to trial rather than being forced to submit the issue to a jury during trial:

> "Treating jurisdiction as a threshold matter that should be challenged prior to trial affords substantial procedural safeguards for the defendant and serves the interests of judicial efficiency and economy. If only a jury could determine subject matter jurisdiction, a defendant would always be put through the expense, anxiety, and uncertainty of a trial and the only mechanism to challenge jurisdiction would be an appeal after the conclusion of trial." By contrast, if the issue can be resolved by the court before trial, the defendant will have the opportunity to seek immediate review through a writ proceeding.

*Id.* (quoting *People v. Betts*, 126 Cal. Rptr. 2d 64, 73 (Ct. App. 2002), *aff'd*, 34 Cal. 4th 1039, 103 P.3d 883 (2005)).

All of these considerations support the conclusion that the determination of whether the state has asserted its power to prosecute a person for a particular offense is a procedural question of law for the court and not an element of the offense to be submitted to the jury. We overrule our prior statement to the contrary in *Rimmer*, *Serrato*, *Wagner*, and *Liggins*. Our prior conclusion was not supported by the Code, was not followed in practice, posed constitutional problems with respect to the elements to be submitted to the jury, was inconsistent with the rules of criminal procedure, and was contrary to the better-reasoned persuasive authorities.

IV.

Having clarified our law regarding criminal jurisdiction, we address the question of whether we can reach this issue on appeal. Because the establishment of criminal jurisdiction is a legislatively defined prerequisite to the state's power to enforce its criminal laws, we have said that challenges to the state's exercise of criminal jurisdiction "cannot be waived." *Rimmer*, 877 N.W.2d at 663. The court of appeals majority acknowledged this statement, but the

majority nonetheless held that it could not reach Heiller's challenge to criminal jurisdiction because the defendant failed to preserve error. We agree with the court of appeals that the defendant failed to preserve error on this issue in the district court. *See State v. Crawford*, 972 N.W.2d 189, 198 (Iowa 2022) ("When we speak of error preservation, all we mean is that a party has an obligation to raise an issue in the district court and obtain a decision on the issue so that an appellate court can review the merits of the decision actually rendered."). The fact that the defendant failed to preserve error in the district court does not at all address the relevant question here: whether the defendant can nonetheless raise his challenge to criminal jurisdiction for the first time on appeal. On the relevant question, the answer is yes; the defendant can raise the challenge for the first time on appeal.

While the establishment of criminal jurisdiction is not an element of an offense, it is an essential prerequisite to the state's ability to enforce its criminal law. "Matters of crime and punishment are creatures of statute," *State v. Pagliai*, 30 N.W.3d 226, 228 (Iowa 2026), and the legislature has the sole authority, within constitutional limits, to determine the extent to which the state, as sovereign, will exercise its power to enforce its criminal law. Section 803.1 reflects the legislature's deliberate calibration of the circumstances under which the state will invoke its power as sovereign to prosecute crime occurring within its borders, occurring partly within its borders, and occurring wholly outside its borders. *See* Iowa Code § 803.1. The statute identifies those conditions that must exist before a person can be "subject to prosecution in this state" and before a court can enter judgment and sentence against that person. *Id.* § 803.1(1). The judicial department is required to "administer the criminal law in accord with [this] legislative command." *Pagliai*, 30 N.W.3d at 228.

Error-preservation rules cannot overcome this legislative command. The rationale for our error-preservation rules is that parties must give the district court the opportunity to correct errors before raising them on appeal. That rationale has no purchase where the issue is whether or not the state has even asserted the power, as sovereign, to prosecute an offense. Section 803.1 specifies the conditions under which the legislature has authorized the state to prosecute criminal offenses. When those conditions are not met, the state is without the power to prosecute a defendant for the offense.

A conviction obtained without the legislatively authorized exercise of prosecutorial power is one the state had no power to secure, regardless of whether the defendant raised the issue below. The deficiency is not a violation of a right belonging to a defendant that can be waived or forfeited; it is a fundamental prerequisite to the initiation of the criminal process that can be raised at any time. *See State v. Streater,* 559 A.2d 473, 475 (N.J. Super. Ct. App. Div. 1989) (stating that even though the "[d]efendant did not object" to the state's jurisdiction to prosecute him on the charges any time at the district court, challenges to territorial jurisdiction "cannot be waived and may be raised at any time"); *People v. McLaughlin,* 606 N.E.2d 1357, 1359 (N.Y. 1992) (stating that territorial jurisdiction "is a question of the sovereign's power to prosecute and punish an accused for conduct which is allegedly criminal," "goes to the very essence of the State's power to prosecute," and therefore "may never be waived"); *State v. Shrum,* 455 N.E.2d 531, 533 (Ohio Ct. App. 1982) ("[T]he question of territorial jurisdiction is so basic that it can be raised at any stage before the trial court or any appellate court, or even collaterally in subsequent and separate proceedings."); *State v. Williams,* 530 P.3d 919, 927 (Or. Ct. App. 2023) ("Defendant was not required to raise the issue of territorial jurisdiction below

before raising it on appeal."); *State v. Dudley*, 614 S.E.2d 623, 625–26 (S.C. 2005) ("Although territorial jurisdiction is not a component of subject matter jurisdiction, we hold that it is a fundamental issue that may be raised by a party or by a court at any point in the proceeding. The exercise of extraterritorial jurisdiction implicates the state's sovereignty, a question so elemental that we hold it cannot be waived by conduct or by consent." (footnote and citation omitted)); *see also* LaFave, *Criminal Procedure* § 16.4(d), at 591 (stating that "the lack of jurisdiction is not waivable" and that "if the trial record establishes that the acts and consequences occurred at places that would put the crime outside of the state's jurisdiction, that object can first be raised on appeal").

To be clear, the issue here is not one regarding the subject matter jurisdiction of the court; the issue is whether the state asserted its sovereign power to prosecute this crime. When the statutory conditions necessary to invoke that power are not satisfied, the state, of which the judicial department is part, has no power to prosecute and convict a defendant. *See Williams*, 530 P.3d at 926 (explaining that a person is subject to prosecution under the laws of the state "only if the offense meets the criteria" in the criminal jurisdiction statute and "[i]f the offense is not one that qualifies under at least one of the subsections, no person is subject to prosecution for that offense under the laws of this state"). The lack of power cannot be conferred by the parties' consent or forfeited by their silence. A challenge raising such a question may be raised at any time during the pendency of the criminal case, including for the first time on appeal. If a case proceeded to trial, as this case did, this court will not disturb a criminal conviction if there is evidence to support a finding that criminal jurisdiction exists, even if the district court did not explicitly make such a finding.

V.

We now apply Iowa Code section 803.1 to the facts of this case. The State has three primary arguments in support of the assertion of criminal jurisdiction. First, it claims that the theft occurred partly in Iowa because at least one of the elements of the offense occurred in Iowa. *See* Iowa Code § 803.1(1)(*a*), (2). Second, the State argues Heiller is subject to prosecution pursuant to section 803.1(1)(*d*), which allows the prosecution of certain crimes occurring wholly outside the state. Third, the State argues that even if there was not criminal jurisdiction to prosecute Heiller for the crime of theft in the second degree, there is criminal jurisdiction to prosecute him for a lesser included offense. We address each argument in turn.

The State first argues that prosecuting Heiller for this theft offense was permissible because an element of the offense occurred in the state. *See id.* § 803.1(1)(*a*), (2). The marshaling instruction provided that the State was required to prove the following:

> 1. On or about the 1st day of October, 2023, the defendant took possession or control of a 2018 Volkswagen Tiguan SUV. . . .
>
> 2. The defendant did so with the intent to deprive the owner of the 2018 Volkswagen Tiguan SUV. . . .
>
> 3. The property, at the time of the taking, belonged to or was in the possession of its owner.

The State isolates the nouns "possession" and "control" from the first element of the marshaling instruction and argues that because Heiller possessed or controlled the vehicle while in Iowa, the statutory test is satisfied.

The State's argument disregards the verb in the instruction. The first element of theft by taking requires proof that the defendant "took" possession or control. The operative word in the instruction is "took." Under the theory of theft

charged in this case, the act criminalized is the taking and not the continued possession of already-taken property. "Theft by taking is not a continuing offense." *Heiller*, ___ N.W.3d at ___, 2026 WL 784065, at \*3; *see State v. Hippler*, 545 N.W.2d 568, 571 (Iowa 1996) (en banc). "Instead, theft by taking occurs at a single moment in time and is complete the instant a person takes possession or control of the property of another with the requisite intent." *Heiller,* ___ N.W.3d at ___, 2026 WL 784065, at \*3.

The taking in this case was complete at the time and place it occurred, which was in Wisconsin. The vehicle was parked at Alioto's La Crosse residence on September 28 and was missing two days later. Alioto reported it stolen to the La Crosse Police Department. The prosecutor conceded the point at the motion for judgment of acquittal, stating: "First, I'd like to make the distinction that the crime being alleged here is not the actual stealing of the car in Wisconsin. The crime alleged is that Mr. Heiller is in possession of stolen property." The prosecutor's concession is significant. It reflects a recognition that the taking occurred in Wisconsin, not Iowa. Indeed, the prosecutor's repeated reframing of the case throughout trial as one about possession of stolen property, rather than theft by taking, suggests that even the State understood that the charged offense presented a jurisdictional obstacle. But reframing the theory of the case at trial and on appeal does not change the elements of the charged offense. The jury was instructed on theft by taking, and it is on theft by taking that the jurisdictional analysis must rest. Because no element of theft by taking occurred in Iowa, Heiller was not subject to prosecution as authorized by sections 803.1(1)(*a*) and 803.1(2).

The State next invokes section 803.1(1)(*d*), which subjects a person to prosecution in Iowa if "[t]he offense is based upon a statute that specifically

prohibits conduct wholly outside of the state, and the conduct bears a reasonable relation to a legitimate state interest, and the person knows or should know that the conduct is likely to affect that interest." Iowa Code § 803.1(1)(*d*). Theft by taking is not such a statute. The word "specifically" in subsection (1)(*d*) is significant. *See id.* It requires that the criminal statute at issue, by its own terms, address and prohibit conduct occurring wholly outside the state. A statute of general application that is silent on its geographic reach does not "specifically prohibit[]" extraterritorial conduct. Were subsection (1)(*d*) read to encompass any statute whose prohibitory scope might, as a matter of judicial construction, be extended to extraterritorial conduct, the word "specifically" would be rendered superfluous. Nothing in the theft chapter's text specifically prohibits conduct occurring wholly outside Iowa's borders.

As a fallback, the State contends that even if Iowa lacked jurisdiction over theft by taking, the judgment should be amended to convict Heiller of the lesser included offense of operating a motor vehicle without the owner's consent under Iowa Code section 714.7. The State argues that both elements of that offense—that Heiller intentionally took possession or control of an automobile, and that the possession or control was without the owner's consent—occurred in Iowa because Heiller was found operating the Tiguan in Waukon.

This argument fails for the same reasons articulated above. Operating a vehicle without the owner's consent, like theft by taking, requires that the defendant took possession or control of the vehicle. *See id.* § 714.7. As with theft, the actus reus is the taking of possession, not continuing possession. As with theft, the intent element must coincide with the taking. *See Heiller*, ___ N.W.3d at ___, 2026 WL 784065, at *6 ("Like Iowa Code section 714.1(1), section 714.7 proscribes the act of taking possession or control of someone's property.");

*State v. Hanes*, 790 N.W.2d 545, 556 (Iowa 2010); *State v. McCormack*, 293 N.W.2d 209, 211 (Iowa 1980). The Tiguan was taken in Wisconsin. The absence of the owner's consent existed at the time of that taking. Neither element of operating a vehicle without the owner's consent occurred in Iowa. Amending the judgment to a lesser included offense does not cure the jurisdictional deficiency when no element of that offense, either, occurred within the state.

VI.

For these reasons, we conclude that Heiller was not subject to prosecution in this state pursuant to section 803.1. We vacate the court of appeals decision and Heiller's conviction and sentence. We remand this case to the district court for further proceedings. *See* Iowa R. Crim. P. 2.19(5)(*b*).

**Decision of Court of Appeals Vacated; District Court Conviction and Sentence Vacated and Case Remanded.**